**Josie SAVAGE, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. CIV.A. H04668.**

United States District Court,
S.D. Texas,
Houston Division.

March 4, 2005.

William C Herren, Herren Law Office, Houston, TX, for Josie Savage, Plaintiff.

Marguerite Esposito Lokey, Special Asst U.S. Attorney, Dallas, TX, for Commissioner of SSA Jo Anne B Barnhart, Defendant.

### MEMORANDUM AND ORDER

HOYT, District Judge.

Pending before this Court are Plaintiff Josie Savage's ("Savage") Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. #12]. Savage challenges the findings and conclusions in the Memorandum and Recommendation [Doc. #11] entered by Magistrate Judge Calvin Botley on March 4, 2005, suggesting that Savage's Motion for Summary Judgment [Doc. #8] be denied, and that Defendant Jo Anne B. Barnhart's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment [Doc. #9] be granted.

Savage's Objections are deemed timely filed. *See* 28 U.S.C. § 636(b)(1). The Court has reviewed the Memorandum and Recommendation and the Objections, as well as made a *de novo* review of the Memorandum and Recommendation and specified proposed findings or recommendations to which objection is made. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 925 F.2d 853, 855 (5th Cir.1991).[1] The Court finds that the Memorandum and Recommendation should be adopted as this Court's Memorandum and Order. It is, therefore,

**ORDERED** that Savage's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. #12] are **DENIED**. It is further

**ORDERED** that the Memorandum and Recommendation [Doc. #11] is **ADOPTED** as this Court's Memorandum and Order. Further, it is

**ORDERED** that Savage's Motion for Summary Judgment [Doc. #8] is **DENIED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment [Doc. #9], is **GRANTED**. It is finally

**ORDERED** that this matter is **DISMISSED WITH PREJUDICE**.

### MEMORANDUM AND RECOMMENDATION

BOTLEY, United States Magistrate Judge.

Pending before the court are Plaintiff Josie Savage ("Savage") and Defendant Jo

---

1. The district court must make a *"de novo* determination of the objections"* raised by the parties. *See Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987). "It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specifically consider." *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982), *overruled on other grounds by Douglass v. United Services* Auto. Ass'n, 79 F.3d 1415 (5th Cir.1996). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Id.* at 410 n. 8; *accord United States v. Carrillo–Morales,* 27 F.3d 1054, 1061 (5th Cir.1994), *cert. denied,* 513 U.S. 1178, 115 S.Ct. 1163, 130 L.Ed.2d 1119 (1995).

Anne B. Barnhart's, Commissioner of the Social Security Administration (the "Commissioner"), cross-motions for summary judgment. Savage appeals the determination of an Administrative Law Judge ("the ALJ") that she is not entitled to receive disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423. Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, it is recommended that Savage's Motion for Summary Judgment (Docket Entry No. 8) be denied, the Commissioner's Motion for Summary Judgment (Docket Entry No. 9) be granted, the ALJ's decision denying benefits be affirmed.

## I. *Background*

Savage filed an application for disability insurance benefits with the SSA on July 17, 2000, alleging disability beginning on May 15, 1999, as a result of degenerative disc disease [1] (*i.e.,* back problems) and coronary artery disease (*i.e.,* blockage in her heart).[2] (R. 19–20, 26, 98, 105). After being denied benefits initially and on reconsideration, Savage requested an administrative hearing before an ALJ. (R. 78).

A hearing was held on April 7, 2003, in Bellaire, Texas, at which time the ALJ heard testimony from Savage, Steven Goldstein, M.D., a medical expert, and Charles R. Poor ("Poor"), a vocational expert ("VE"). (R. 19, 32–67). In a decision dated May 23, 2003, the ALJ denied Savage's application for benefits. (R. 19–27). On May 28, 2003, Savage appealed the

ALJ's decision to the Appeals Council of the SSA's Office of Hearings and Appeals. (R. 14–15). The Appeals Council, on February 5, 2004, denied Savage's request to review the ALJ's determination. (R. 6–11). This rendered the ALJ's opinion the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Savage filed the instant action on February 24, 2004, seeking judicial review of the Commissioner's denial of her claim of benefits. *See* Docket Entry No. 1.

## II. *ANALYSIS*

### A. *Statutory Bases for Benefits*

Social Security disability insurance benefits are authorized by Title II of the Act and are funded by Social Security taxes. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed.2001). The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled,* regardless of indigence. A claimant for disability insurance can collect benefits for up to twelve months of disability prior to the filing of an application. See 20 C.F.R. §§ 404.131, 404.315; *Ortego v. Weinberger,* 516 F.2d 1005, 1007 n. 1 (5th Cir.1975); *see also Perkins v. Chater,* 107 F.3d 1290, 1295 (7th Cir.1997). For purposes of Title II disability benefits, Savage was insured for benefits through the date of the ALJ's decision—*i.e.,* May 23, 2003. (R. 19). Consequently, to be eligible for disability

---

**1.** "Degenerative disease" is a disease characterized by the progressive impairment of the function of an organ or organs and not attributable to some cause such as an infection or a metabolic defect. *See* GOULD'S MEDICAL DICTIONARY 363 (4th ed.1979).

**2.** "Coronary artery disease" means atherosclerosis of the coronary arteries, which may

cause angina pectoris, myocardial infarction, and sudden death. Both genetically determinated and avoidable risk factors contribute to the disease; they include hypercholesterolemia, hypertension, smoking, diabetes mellitus, and low levels of high density lipoproteins. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 514 (29th ed.2000).

benefits, Savage must prove that she was disabled prior to that date.

Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Act. See 42 U.S.C. § 423(d); 20 C.F.R. § 404.1505(a). Under Title II, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

### B. *Standard of Review*

#### 1. *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir.1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir.2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See*

*Merritt–Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir.1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir.2000).

#### 2. *Administrative Determination*

 Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson*, 309 F.3d at 272; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999).

 When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir.2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir.2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary

choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve". *Id.*

**C.** *ALJ's Determination*

■■■ An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *See* 20 C.F.R. § 404.1520(b).

2. An individual who does not have a "severe impairment" will not be found to be disabled. *See* 20 C.F.R. § 404.1520(c).

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. *See* 20 C.F.R. § 404.1520(d).

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made. *See* 20 C.F.R. § 404.1520(e).

5. If an individual's impairment precludes performance of her past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. *See* 20 C.F.R. § 404.1520(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000); *accord Boyd*, 239 F.3d at 704–05. The claimant has the burden to prove disability under the first four steps. *See Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson*, 309 F.3d at 272; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of her existing impairments, the burden shifts back to the claimant to prove that she cannot, in fact, perform the alternate work suggested. *See Boyd*, 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis *See id.*

■■■ The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir.1992). An individual claiming disability benefits under the Act has the burden to prove that she suffers from a disability as defined by the Act. *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir.1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir.1985). A claimant is deemed disabled under the Act only if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir.2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir.1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activi-

ty" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton,* 209 F.3d at 452–53; *see also* 20 C.F.R. § 404.1572(a)-(b).

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See Hames v. Heckler,* 707 F.2d 162, 165 (5th Cir.1983); *see also* 42 U.S.C. § 423(d)(3). "[A]n individual is 'under a disability, only if [her] impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' " *Greenspan,* 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)). This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if she applied. *See Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant met the special earnings requirements of the Social Security Act on May 15, 1999, the date she stated she became disabled, and continued to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful work since the alleged onset date of disability.

3. The claimant has coronary artery disease and degenerative disc disease, but these impairments do not meet or equal in severity the requirements of any of the medical listings in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony was not fully credible or consistent with the record considered as a whole.

\* \* \* \* \* \*

6. The claimant does not have the residual functional capacity to perform her past relevant work.

(R. 26–27). As to the fifth step, the ALJ concluded:

5. The claimant has the residual functional capacity to sit 2 hours at a time for a total of 6 hours of an 8 hour workday, lift and carry 5 pounds frequently and 10 pounds occasionally, infrequently stoop and bend, and reach without limitations.

\* \* \* \* \* \*

7. The claimant is 46 years of age, defined as a younger individual.

8. The claimant has a marginal education.

9. The claimant does not have skills that readily transfer to sedentary jobs.

10. Based on the testimony of the vocational expert, and considering Rule 201.18, Appendix 2, Subpart P, Regulations No. 4, jobs that the claimant is able to perform exist in significant numbers in the national economy. Examples of such jobs include hand painter, bench assembler, hand packer, and sorter/marker/coder.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(R. 27).

 This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson,* 309 F.3d at 272; *Watson,* 288 F.3d at 215; *Myers,* 238 F.3d at 619; *Newton,* 209 F.3d at 452; *Greenspan,* 38

F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). To determine whether the decision to deny Savage's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the claimant's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the claimant's age, educational background, and work history. *See Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir.1995); *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972)). Any conflicts in the evidence are to be resolved by the ALJ and not the court. *See Newton,* 209 F.3d at 452; *Brown,* 192 F.3d at 496; *Martinez,* 64 F.3d at 174; *Selders,* 914 F.2d at 617.

### D. *Issues Presented* [3]

Savage contends that substantial evidence does not support the findings of the ALJ. Specifically, Savage argues that the ALJ erred in rejecting her claim that she is functionally illiterate and, instead, finding that she had a marginal education. *See* Docket Entry No. 8. Savage maintains that the ALJ improperly shifted the burden at step five of the sequential evaluation process to Savage to demonstrate that she was illiterate. *See id.* Savage further contends that if the ALJ had found Savage to be illiterate, Medical–Vocational Guideline, commonly referred to a the "grid rules," 201.17 would apply instead of Grid Rule 201.18, and she must be found disabled. The Commissioner contends that the ALJ's findings are supported by substantial evidence. *See* Docket Entry No. 10.

### E. *Educational Assessment*

Savage argues that the ALJ erred in determining that she had a marginal education rather than being illiterate. The Commissioner will "consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). A claimant with a "marginal education," by contrast, has "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). "[F]ormal schooling at a 6th grade level or less" is generally considered a marginal education. *Id.* The concept of "education" is described in the regulations as follows:

> Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

20 C.F.R. § 404.1564(a).

Although at the administrative hearing, Savage testified that she "can read very little" (R. 44), Savage does have a sixth

---

**3.** Savage does not dispute certain facts found by the ALJ, including that Savage has coronary artery disease and degenerative disc disease; is capable only of sedentary activities; and, has no job skills that transfer to sedentary jobs. *See* Docket Entry No. 8. Because Savage only challenges the ALJ's finding at step five of the sequential evaluation process, the ALJ's findings as to the previous four steps will not be disturbed.

grade education (R. 37) and can write "pretty good" but not spell (R. 44). When questioned about her daily activities, Savage testified, "I read my Bible a lot." (R. 51). Later in the hearing, however, when questioned further by the ALJ, Savage tried to retract this statements:

> ALJ: I do have a question for the claimant regarding the ability to read, and one is, ma'am you said you read your Bible some?
>
> CLMT: Yes, ma'am. I don't know what, you know, how they write words, I don't know how to say that. I just read what I can read and I skip on and go, you know, like what it says at the end, just different little bitty things, but I can't read the Bible reading. And like if it's two words I can't hardly do that. I read what I can read and I skip the other. But to me I'm reading my Bible, you know, I've got it out and as far as reading it, knowing the words, no ma'am, I don't.

(R. 62). While Savage may not understand all of the words in the Bible, the fact that she spends "a lot" of time in this activity indicates that she is able to discern the basic meaning of what she reads.

Savage also made statements in the Social Security application process that belie her current contention that she cannot read. Indeed, the first page of the application asked whether she could read English and could write more than her name in English. (R. 104). Savage answered "Yes" to both questions. (R. 104). Savage signed the application containing her responses on July 17, 2000, averring, that she was telling the truth on the form. (R. 113). Additionally, in an August 8, 2000, telephone interview with a Social Security representative, Savage stated that she dropped out of school after the sixth grade because her father made her get married at age fifteen. (R. 323). At that point,

Savage reported that she had been held back three times because she missed so much school. (R. 323). She told the representative that she was in regular classes and did not believe that she had a learning problem and, in fact, was quick at "picking up on things." (R. 323). She further stated that she was able to read and write, although she was not able to spell very well. (R. 323). Savage also acknowledged that she had obtained her driver's license through a written examination. (R. 323).

Contrary to Savage's contention, the ALJ acknowledged and considered her testimony that she is functionally illiterate. (R. 25). As the ALJ noted, despite the fact that Savage testified that she was able to read and write, she was able to engage in semiskilled work. (R. 25). She worked as a cashier at a convenience store and as a waitress, which she testified that she did by abbreviating words on orders. (R. 62, 64). Although Savage argues that there is "no logical connection between performance of semi-skilled work and literacy," there is a connection between the ability to read and the performance of semiskilled work. *See Johnson v. Commissioner of Soc. Sec.*, 97 Fed.Appx. 539, 541, 2004 WL 957815, at *2 (6th Cir. Apr.29, 2004); *Range v. Social Sec. Admin.*, 95 Fed.Appx. 755, 757, 2004 WL 690169, at *2 (6th Cir. Mar.30, 2004). As set forth in the *Dictionary of Occupational Titles*, work as a waitress requires Language Development Level 2, which is defined as a "Passive vocabulary of 5,000–6,000 words. Read at a rate of 190–215 words per minute." Thus, in light of Savage's education and work experience, substantial evidence supports the administrative law judge's conclusion that Savage has a marginal education and is not illiterate. To the extent that Savage asserts that the ALJ erred by not articulating all of Savage's admissions against interest in her decision,[4] the Fifth

---

4. Savage also argues that this court has re-

cently dealt with a "similar issue," reversing

Circuit has rejected the argument that an ALJ must specifically state the evidence that supports her decision and discuss all the evidence that was rejected. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994).

Finally, Savage is mistaken by his assertion that the ALJ's hypothetical question to the VE was flawed because it did not "incorporate the issue of literacy, a nonexertional impairment." Illiteracy is not a "nonexertional impairment," but, as set forth above, is one level of education. *See* 20 C.F.R. § 404.1564(b)(1). A marginal education, which the ALJ found that Savage had, is defined as "the ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at the sixth grade level or less is a marginal education." *See id.* at § 404.1564(b)(2). Here, there was substantial evidence that Savage had a marginal education; i.e., she had a sixth grade education; she was able to perform simple unskilled work as well as semiskilled work; she passed a written driver's examination test; and, she reads the Bible. Under the regulations, Savage's education level and skills do not satisfy the definition of illiterate. The only evidence of Savage's alleged illiteracy is her testimony, which more aptly meets the definition of marginal education when taken as a whole. Her education and work experience support the ALJ's conclusion that Savage has a marginal education. 20 C.F.R. § 404.1564(b).

the ALJ's decision due to insufficient documentation as to the claimant's literacy. *See* Docket Entry No. 8 (citing *Delgado v. Barnhart* 305 F.Supp.2d 704 (S.D.Tex.2004) (Hanen, J.)). Contrary to Savage's assertion, this case is distinguishable from *Delgado,* as that case dealt with whether the claimant—who was from Mexico—was proficient in the English language. *See* 305 F.Supp.2d at 711–716. Unlike this case, the claimant *Delgado*

## III. *Conclusion*

It is, therefore, **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket Entry No. 8) be **DENIED.** Further, it is

**RECOMMENDED** that the Defendant's Motion for Summary Judgment (Docket Entry No. 9) be **GRANTED.** Further, it is

**RECOMMENDED** that the Commissioner's decision denying Savage disability benefits be **AFFIRMED.** Finally, it is

**RECOMMENDED** that this matter be **DISMISSED** from the dockets of this Court.

The Clerk of the Court shall file this Memorandum and Recommendation and provide the parties with a true copy. The parties shall have ten (10) days from receipt to file specific, written objections to the Memorandum and Recommendation. *See* FED. R. CIV. P. 72. Absent plain error, the failure to file objections bars an attack on the factual findings, as well as the legal conclusions, on appeal. The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208–1010. Copies of the objections must be mailed to the opposing party and to the chambers of the magistrate judge, P.O. Box 61205, Houston, Texas 77208–0070.

March 4, 2005.

indicated in his disability application that he could not speak or read English, could not write his name in English, and the claimant required an interpreter during the administrative hearing. *See id.* at 712. While in *Delgado* the record was found to be insufficient to support the ALJ's findings of "limited education," in this case, as set forth above, there is ample record evidence supporting a finding that Savage had a marginal education.