Joy CRANFIELD, Plaintiff–Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.

No. 02–5685.

United States Court of Appeals, Sixth Circuit.

Nov. 3, 2003.

Peter B. Murphy, Ruth, McCarthy & Murphy, Chattanooga, TN, for Plaintiff–Appellant.

Gary A. Sultz, Chicago, IL, Mary Ann Sloan, Atlanta, GA, Loretta Simonetti Harber, Asst. U.S. Attorney, Knoxville, TN, for Defendant–Appellee.

Before MOORE and GILMAN, Circuit Judges, and MILLS, District Judge.*

---

* Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

OPINION

RICHARD MILLS, Judge.

Appellant Joy Cranfield timely appeals the district court's decision to deny her disability claims. She argues that the previous determinations about her disability status are incorrect because those decisions did not consider her obesity. Ms. Cranfield also contends that her case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) due to "new evidence" that she submitted to the district court. For the reasons that follow, we reject her arguments and AFFIRM the district court.

## I.  FACTS

Joy Cranfield is a 51–year–old,[1] college-educated woman who has worked largely in the insurance industry. She is five feet four and a half inches tall and appears to have been obese for much of her adult life, weighing anywhere from 214–276½ pounds. Following a 1981 car accident, Ms. Cranfield began to experience increased health difficulties. In addition to her obesity, Ms. Cranfield suffered from back problems, denervation of the left lower extremity, bilateral carpal tunnel syndrome, difficulty with her thumbs, and a torn rotator cuff. Ms. Cranfield claims that by May 1998, her physical limitations made it impossible for her to work.

Ms. Cranfield applied for disability and disability insurance benefits on February 16, 1999, basing her claims on back, foot, hand, and leg problems. She never claimed that her weight affected her ability to work. When the Tennessee state agency that makes disability determinations for the Social Security Administration found that Ms. Cranfield was not

---

1. Ms. Cranfield was 48 years old at the time the ALJ issued his decision.

disabled, she requested and received a hearing before ALJ John F. Proctor. The hearing took place on March 15, 2000. At its outset, Ms. Cranfield's attorney submitted a pre-hearing memorandum which discussed three impairments: diabetes, bilateral carpal tunnel syndrome, and back problems.

Ms. Cranfield testified at the hearing, as did vocational expert Benjamin Johnson. Ms. Cranfield claimed that her physical condition caused severe functional limitations, including pain, irritability, fatigue, and a complete loss of the use of the thumb on her right (dominant) hand. She stated that she could barely write her name or fill out a draft from her checking account. Additionally, she claimed that she could not stand long enough to iron a shirt and had to hold onto walls and furniture to support herself when she walked around her house. The vocational expert (the "VE") stated that if Ms. Cranfield's testimony were to be believed, she would not be able to perform any job. However, he also testified that if Ms. Cranfield could perform sedentary work that did not require constant, repetitive use of her hands, she could perform jobs such as dispatcher, security systems monitor, and telephone order taker. According to the VE, there were about 250,000 such jobs in the national economy.

In addition to Ms. Cranfield's and the VE's testimony, the ALJ considered medical evidence from five doctors who treated Ms. Cranfield. The doctors–Dr. McGee (Ms. Cranfield's primary-care physician); Drs. Broadstone and Hodges (Ms. Cranfield's orthopedists), and Drs. Mastey and Jemison (Ms. Cranfield's hand physicians)– noted a variety of problems.

## A. The Medical Evidence

### 1. Dr. McGee's Reports

Dr. McGee began treating Ms. Cranfield in 1987. He monitored her blood pressure and diabetes. He frequently noted that she was overweight or obese. In August 1998, he performed a complete musculo-skeletal examination of Ms. Cranfield. He noted that she had a normal gait, range of motion, muscle strength, and muscle tone.

### 2. Dr. Hodges' Reports

Following a September 1996 MRI, Dr. Hodges diagnosed a "rather large" herniated disk between Ms. Cranfield's fourth and fifth vertebrae (L4–5). The pain from this condition was significantly abated by a November 1996 microdiskectomy, the success of which allowed Ms. Cranfield to return to light duty work in late December 1996. However, Ms. Cranfield continued to experience pain and Dr. Hodges diagnosed a degenerative disk disease about a month after Ms. Cranfield returned to work.

In April 1997, Ms. Cranfield visited Dr. Hodges and complained of "a lot of intermittent low back pain" and some pain in her right foot. Dr. Hodges gave Ms. Cranfield an unspecified injection and prescribed an orthotic for her foot problems. He reported no abnormal findings other than some limited flexibility and the degenerative disk disease he noted during a previous visit.

### 3. Dr. Broadstone's Reports

In September 1998, Ms. Cranfield visited Dr. Broadstone. Dr. Broadstone recommended a second surgery to repair Ms. Cranfield's herniated disk and relieve nerve root compression. The surgery was performed on September 19, 1998, and Ms. Cranfield experienced some–though incomplete–relief from the symptoms. In December 1998, Ms. Cranfield complained of diffuse back pain and occasional numbness in her left great toe, but Dr. Broadstone saw no indications of nerve root abnormalities. In March 1999, Ms. Cranfield re-

ported increasing pain, even though Dr. Broadstone believed that her condition was improving.

Dr. Broadstone saw Ms. Cranfield again in June 1999 after she complained of a lot of intermittent back pain and abnormal sensation in both feet. As before, Dr. Broadstone perceived no nerve root abnormalities. Nevertheless, he recommended electromyography (EEG) and nerve conduction studies. These efforts produced no evidence of denervation of the left L5 nerve root territory. In September 1999, Dr. Broadstone reported that while an x-ray showed some narrowing of the the L4–5 disk, Ms. Cranfield's condition had stabilized overall. In December 1999, he opined that some of Ms. Cranfield's symptoms were unrelated to her back and were likely related to her weight, diabetes, and general deconditioning. In a February 4, 2000, treatment note, Dr. Broadstone stated that Ms. Cranfield had experienced a popping in her back while coughing, but she that had improved since that episode.

### 4. Dr. Mastey's Reports

Dr. Mastey first examined Ms. Cranfield for hand and wrist problems in January 1997 when she was doing a lot of typing and began experiencing numbness and tingling in both hands. Dr. Mastey diagnosed bilateral carpal tunnel syndrome, a positive bilateral pronator compression, and a partial tear of Ms. Cranfield's right rotator cuff. Dr. Mastey recommended a right wrist injection, night splints, and work restrictions that included a change of activities every thirty minutes. The next month, Ms. Cranfield reported marked improvement, but complained about pain in the base of her left thumb. Dr. Mastey diagnosed the thumb pain as synovitis (early arthritis).

In March 1997, Ms. Cranfield reported improvement and Dr. Mastey altered her work restrictions to allow her to work continuously for three hours before she needed to rest or change activities. In April 1997, Dr. Mastey ended the repetitive work prohibition and limited Ms. Cranfield to lifting or grabbing weights not exceeding fifteen pounds. Ms. Cranfield complained over the next two months that her condition was worsening, but Dr. Mastey did not alter her restrictions. During her last visit to Dr. Mastey, on November 24, 1997, Ms. Cranfield reported no significant changes and stated that she did not want to have surgery.

### 5. Dr. Jemison's Reports

Ms. Cranfield first visited Dr. Jemison in January 1998. Dr. Jemison ordered x-rays and the x-rays showed minimal degenerative changes. Like Dr. Mastey, Dr. Jemison concluded that Ms. Cranfield suffered from bilateral carpal tunnel syndrome, possible pronator syndrome, and synovitis and degenerative changes in the left thumb. Dr. Jemison recommended nerve conduction studies, but the studies revealed no abnormalities. Ms. Cranfield continued to complain about persistent numbness and tingling and Dr. Jemison recommended that she seek work that involved less repetitive use of her hands, wrists, and fingers. He strongly recommended ergonomic adjustments if she continued in her current employment. In March and April 1998, Ms. Cranfield was temporarily assigned to a filing position and Dr. Jemison noted that she was doing better during that time. Later in April, she began to suffer "increased problems" and Dr. Jemison advised her to try to find a position that did not involve prolonged keyboard use.

Ms. Cranfield did not see Dr. Jemison again until February 1999. She told him that she was feeling better. She had stopped working in May 1998, but had experienced a recent "flare-up." Dr. Jemi-

son ordered new nerve conduction studies, but the results of the studies were normal. Dr. Jemison could not identify the etiology of Ms. Cranfield's discomfort. He suggested that it could be related to her diabetes, but noted that this did not show up on the nerve conduction study. In April 1999, Dr. Jemison opined that Ms. Cranfield's symptoms were primarily neuropathic in nature. In July 1999, pain flared around one of Ms. Cranfield's ring fingers and Dr. Jemison ordered an injection. Ms. Cranfield did not see Dr. Jemison again until November 1999 when she complained of what he called "very diffuse type symptoms," especially pain in her thumbs. Dr. Jemison noted that Ms. Cranfield's rheumatoid profile was normal and he diagnosed probable osteoarthritis with secondary synovitis.

### B. Prior Legal Determinations

On March 29, 2000, the ALJ issued his findings. He concluded that the combination of Ms. Cranfield's back condition, carpal tunnel syndrome, and diabetes was a severe impairment which prevented her from performing her past work, but he also determined that she had the capacity to perform sedentary work that did not require repetitive hand use. The ALJ believed his assessment was consistent with the limitations imposed by Ms. Cranfield's various treating physicians.

Ms. Cranfield timely sought review of the ALJ's decision by the Appeals Council. In addition to the medical evidence she provided the ALJ, Ms. Cranfield submitted two other medical reports to the Appeals Council. One of the reports, issued by Dr. McGee on April 4, 2000, stated that Ms. Cranfield could sit continuously throughout an eight hour day, could stand and walk two hours each during the day, and could occasionally lift ten pounds. Dr. McGee's report further stated that while Ms. Cranfield could not stoop, squat, kneel, or crawl, she could occasionally

bend, climb stairs, reach above her shoulders, and walk on uneven surfaces. The second report Ms. Cranfield submitted was issued by Dr. Broadstone on June 19, 2000. According to it, Ms. Cranfield could stand and walk only a half hour and could sit for a maximum of one hour. Dr. Broadstone outlined these and other limitations in a report that he issued ten days before Ms. Cranfield underwent a scheduled surgery.

On October 20, 2000, the Appeals Council denied Ms. Cranfield's request for review and informed her that the ALJ's decision stood as the Social Security Commissioner's final decision. Ms. Cranfield then sought judicial review in the district court. She argued that her benefits claim should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further consideration of Drs. McGee and Broadstone's reports and because the ALJ failed to consider her obesity when he issued his decision.

The district court rejected both of Ms. Cranfield's arguments. It found that a remand was unwarranted since Ms. Cranfield failed to satisfy either the materiality or show good cause components of a sentence six remand. Ms. Cranfield has timely appealed.

## II. JURISDICTION

The district court had jurisdiction over this case by virtue of 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

This Court's review of a final decision by the Commissioner of Social Security is limited to whether there is substantial evidence in the record to support the ALJ's factual findings. *See Foster v. Halter,* 279 F.3d 348, 353 (6th Cir.2001) (citation omitted). An ALJ's findings as to disability are conclusive if they are supported by

substantial evidence. *See id.* (citation omitted). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept.' " *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981), *quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842, (1971). We must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *See Foster*, 279 F.3d at 353, *quoting Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).

There is a split in the circuits with regard to the second issue in this appeal (whether the post-hearing medical evidence was material and whether Ms. Cranfield had good cause to submit it after the ALJ's decision). *See Thomas v. Sullivan*, 928 F.2d 255, 260 n.1 (8th Cir.1991)(identifying conflict between circuits, but applying an abuse of discretion standard). This Circuit has not established whether such an issue is subject to de novo review or reviewed for an abuse of discretion. Since Ms. Cranfield's argument would fail under either standard of review, the matter need not be resolved here.

## IV. ANALYSIS

### A. Obesity

■ Ms. Cranfield contends that the ALJ should have specifically addressed her obesity when he determined her level of impairment. Her primary authority is *Morehead Marine Services v. Washnock*, 135 F.3d 366 (6th Cir.1998), a Longshore and Harbor Workers' Compensation Act case. In *Morehead*, the Court held that the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A), required an ALJ's decision to "include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.' " *See id.* at 375, *citing* 5 U.S.C. § 557(c)(3)(A). Since the ALJ in *Morehead* did not include "specific" and "accurate" references to evidence which supported his decision, the Court remanded the case. *See id.*

Unlike the ALJ in *Morehead*, the ALJ in this case included specific and accurate references to evidence that supported his decision. He addressed all of the issues that Ms. Cranfield relied on in her claim for benefits–back, foot, hand, and leg problems. He discussed the opinions of Drs. McGee, Hodges, Broadstone, Mastey, and Jemison, considered the testimony of Ms. Cranfield and the VE, weighed the evidence, and explained the reasons for his determination. The ALJ did nothing more than mention Ms. Cranfield's obesity because neither Ms. Cranfield nor her doctors offered any evidence to suggest that her weight was a significant impairment. Since Ms. Cranfield's claims did not indicate that obesity was a significant impairment, the ALJ was not required to give the issue any more attention than he did.

In addition to *Morehead*, Ms. Cranfield relies on 20 CFR § 404.1512. This regulation, entitled "Evidence of your impairment," explains that a claimant has the burden of proving a disability and defines and identifies the sort of evidence a claimant may submit. *Id.* Ms. Cranfield seizes on language in § 404.1512(a) which states that the Social Security Administration (the "SSA") will consider impairments "you say you have or about which we receive evidence." *Id.* She asserts that because her doctors' reports indicated her obesity, the ALJ was required to consider it as a possible impairment. The problem with this argument is the ALJ never received evidence suggesting Ms. Cranfield or her doctors regarded her weight as an impairment. In fact, Ms. Cranfield provided no evidence that obesity affected her

ability to work. Moreover, 20 CFR § 404.1512(a) required Ms. Cranfield to "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and ... its effect on [her] ability to work on a sustained basis." *See* 20 CFR § 404.1512(a). Ms. Cranfield did not satisfy this requirement with respect to an obesity claim. Thus, the ALJ and the district court had no obligation to address Ms. Cranfield's obesity.

**B. Sentence Six of 42 U.S.C. § 405(g)**

■ Sentence six of 42 U.S.C. § 405(g) provides that a court "may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." A sentence six remand is comparable to a Fed.R.Civ.P. 60(b) motion for a new trial based on newly discovered evidence. *See Howard v. Commissioner of Social Security,* 276 F.3d 235, 243 (6th Cir.2002).

New evidence is considered "material" if the claimant can "demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *See Sizemore v. Secretary of Health and Human Svcs.,* 865 F.2d 709, 711 (6th Cir.1988). Ms. Cranfield argues that the April 2000 report by Dr. McGee and the June 2000 report by Dr. Broadstone are obviously "new" since they did not exist at the time the ALJ issued his findings and "material" because they "impose additional and significant restrictions in excess of the findings of the ALJ."

While Cranfield is correct that Drs. McGee and Broadstone's reports are new, she is wrong when she argues that they are material. Dr. McGee's report is consistent with the ALJ's assessment of Cranfield's ability to perform sedentary work. According to Dr. McGee, Ms. Cranfield could sit continuously (with normal breaks) throughout an eight-hour day, could stand and walk two hours each during the day, and could lift ten pounds on an occasional basis. These capacities are consistent with the requirements for performing sedentary work. *See* 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 96–9p, 61 Fed.Reg. 34478, 34480 (1996).

The only meaningful difference between the ALJ's determination and Dr. McGee's report concerns Ms. Cranfield's ability to "stoop". The ALJ found Ms. Cranfield was capable of stooping and Dr. McGee clearly stated that Ms. Cranfield could bend but not stoop. As the Appellee explains, however, it appears that this apparent conflict is simply a disagreement of terminology. The term "stoop", as used by the SSA, describes the least strenuous form of bending. *See* Social Security Ruling 85–15 § 2(b). Thus, when the ALJ found that Ms. Cranfield could stoop, he probably meant that she could bend. Read in this way, the ALJ's conclusions are consistent with Dr. McGee's report.

Dr. Broadstone's June 19, 2002, report is more restrictive than Dr. McGee's report. According to Dr. Broadstone, Ms. Cranfield could not reasonably be expected to work a forty hour work week on a consistent basis because the pain she experienced would severely limit her ability to stand, sit, or walk. In Dr. Broadstone's opinion, Ms. Cranfield's pain would affect her ability to sleep and the medication she took would impact her concentration, coordination, and memory. Ms. Cranfield contends that if the ALJ had Dr. Broadstone's report, there would have been a reasonable probability that he would have awarded her benefits.

The Court is not persuaded that Dr. Broadstone's report would have affected

the ALJ's determination. Dr. Broadstone prepared the report just ten days before Ms. Cranfield was scheduled to undergo a second disk surgery and the limitations he asserted were inconsistent with the opinions of Ms. Cranfield's four other doctors. More importantly, Dr. Broadstone's report did not discuss Ms. Cranfield's condition as it existed during the period adjudicated by the ALJ (March 29, 2002). His June 19, 2002, report discussed Ms. Cranfield's condition as it existed ten weeks *after* the ALJ made his decision. Therefore, Dr. Broadstone's report is immaterial. *See Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir.1992)(stating that in order for evidence to be material, it must pertain to the period adjudicated by the ALJ).

Beyond the materiality problem, Ms. Cranfield has failed to establish "good cause" for submitting untimely medical reports. In *Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir.1984), the Court held that in order to "show good cause," the complainant must give a valid reason for failing to obtain evidence prior to the hearing. *Id.* at 554. Ms. Cranfield contends that she could not have submitted the reports before the hearing because Dr. McGee and Dr. Broadstone did not complete their reports until after the ALJ made his decision. Furthermore, she claims that she did not alert the ALJ that the reports were forthcoming because she did not know when the reports would be completed and she did not want to delay the proceedings.

Ms. Cranfield's arguments lack merit. She and the attorney who represented her had months to prepare for the hearing. If the doctors' reports were vital to Ms. Cranfield's case, Ms. Cranfield or her attorney could have sought the reports earlier or done something more than wait for them to arrive in the mail. Ms. Cranfield or her attorney could have contacted the doctors or visited their offices if the reports were important to her case. Furthermore, Ms. Cranfield could have notified the ALJ that additional evidence was forthcoming and sought a continuance for that reason. This option was plainly available to her, but she chose not to take it. She proceeded to hearing without all her evidence and she must live with the consequences. *See Cline v. Commissioner of Social Security,* 96 F.3d 146, 149 (6th Cir.1996)(finding that failure to notify an ALJ at or following the hearing regarding the need to consider additional medical evidence prevented a claimant from later asserting good cause to submit new evidence).

## V. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.