Geraldine **BORREGO,** Plaintiff,

v.

Michael J. **ASTRUE,** Commissioner of the Social Security Administration, Defendant.

Nos. **EP–10–CV–00400–KC–DCG, EP–10–CV–00400–DCG.**

United States District Court, W.D. Texas, El Paso Division.

Oct. 4, 2011.

---

Cheryl L. Langston, Reyes & Reyes Law Firm, Dallas, TX, for Plaintiff.

Mary F. Lin, Office of the General Counsel, Region VI, Social Security Administration, Dallas, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

DAVID C. GUADERRAMA, United States Magistrate Judge.

This is a civil action seeking judicial review of an administrative decision. Plaintiff Geraldine Borrego appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), the District Court has jurisdiction to hear the appeal. Upon consent of the parties, the District Court, in accordance with 28 U.S.C. § 636(c) and Appendix C of the Local Court Rules for this district, transferred the case to this Court for further proceedings and entry of judgment. After considering the parties' briefs, the record evidence, and the Administrative Law Judge's ("ALJ") written opinion, the Court, for the reasons set forth below, finds that the final decision of the Commissioner should be AFFIRMED.

## I. BACKGROUND

Born in 1946, Plaintiff was diagnosed with breast cancer in 1989. She underwent a radical mastectomy whereby her right breast and lymph nodes under her right arm were removed. R. 14–15, 19–21.[1] A few years later in 1993, she suffered a relapse of her cancer, which was successfully treated with chemotherapy and radiation therapy. R. 20–21. Since then, her cancer has not recurred. R. 15. From November 1972 to March 2001,

---

1. References to the transcript of the record of administrative proceedings [ECF No. 18] filed in this case are designated by "R." followed by page numbers. Additionally, "ECF No." (Electronic Case Filing Number) refers to the document number assigned to a document by CM/ECF, aka PACER, the federal courts' electronic case management system.

Plaintiff, a high-school graduate, was employed by a garment manufacturing, distribution, and/or shipping concern. R. 17. There, her job duties included clerical work, inventory control, and supervision of packers in the shipping area. R. 15–18, 119, 159. In March 2001, her employer modified her work responsibilities to include lifting of heavy boxes weighing 15–20 pounds. R. 21, 35. Prior to that, she did not pick up boxes at her work. R. 18, 36. According to Plaintiff, who is right handed, she was unable to pick up such heavy objects in part because her arms became weaker following her mastectomy. R. 21, 36. As a result, she was terminated from her job. R. 36. Subsequently, she worked for a two-month period for another employer, where she performed customer service duties. R. 159. She has not worked since May 2001.

On October 10, 2006, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of May 1, 2001, which she later amended to March 1, 2005. R. 11, 93–95. She alleged that she was disabled due to, *inter alia,* complications from mastectomy, problems with her right arm, shoulders, back, and knees, thyroid problems, high cholesterol, fatigue, sleeping disorder, depression, and memory and concentration problems. R. 14, 113, 126, 133, 151. After her application was denied initially and later on reconsideration, she requested a hearing. On June 18, 2008, the ALJ held a hearing where she was represented by her counsel. On November 26, 2008, the ALJ rendered a decision unfavorable to Plaintiff, finding that through December 31, 2006, the last date insured, she was not disabled within the meaning of the Social Security Act and was not entitled to the requested benefits. R. 50. Specifically, the ALJ determined that she was capable of performing her past relevant work as a clerical worker. *Id.* On September 11, 2010, the Social Se-

curity Appeals Council denied her request for review of the ALJ's decision, rendering it the final decision of the Commissioner. R. 1–2.

On October 28, 2010, Plaintiff filed with the District Court a motion to proceed *in forma pauperis* along with her complaint seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). Her complaint was filed after this Court granted her motion. Upon filing of an answer by the Commissioner, Plaintiff, on April 11, 2011, filed her brief in support of her request that the Court reverse the Commissioner's decision and remand the case for further administrative proceedings. Pl.'s Br. in Support of Claim 5 [hereinafter Pl.'s Br.], ECF No. 22. On May 6, the Commissioner responded with a brief in support of his decision to deny benefits. Br. in Support of Comm'r's Decision 7 [hereinafter Comm'r's Br.], ECF No. 23.

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

 Judicial review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Audler v. Astrue,* 501 F.3d 446, 447 (5th Cir.2007); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002); 42 U.S.C. 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "'It is more than a mere scintilla and less than a preponderance.'" *Boyd v. Apfel,* 239 F.3d

698, 704 (5th Cir.2001) (quoting *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir.2000)). In applying the substantial evidence standard, the reviewing court must scrutinize the entire record to determine whether such evidence is present, but it may not reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir.2001) (*per curiam* ); *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000). " 'Conflicts in the evidence are for the Commissioner and not the courts to resolve.' " *Watson v. Barnhart,* 288 F.3d 212, 215 (5th Cir.2002) (internal brackets omitted) (quoting *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir.1999)).

In determining whether substantial evidence of disability is present, the court "weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Perez v. Barnhart,* 415 F.3d 457, 462 (5th Cir.2005) (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991)). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995) (*per curiam* ). If, on the other hand, the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the Court may, among other things, reverse the Commissioner's decision and remand the case for further proceedings. *Murkeldove v. Astrue,* 635 F.3d 784, 792–94 (5th Cir.2011) (discussing a remand pursuant to sentence four of 42 U.S.C. § 405(g)). A finding of no substantial evidence, however, is appropriate only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir.1988) (*per curiam* ) (internal quotation marks and citation omitted).

## B. The Standard for Entitlement to Social Security Benefits and Burden of Proof

An individual applying for benefits bears the initial burden of proving that he or she suffers from a disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Perez,* 415 F.3d at 461 (citations omitted). "Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton,* 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)-(b)).

In evaluating a disability claim, the Commissioner is required to conduct a five-step sequential analysis to determine "(1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work." *Perez,* 415 F.3d at 461 (citations omitted); *see also Watson,* 288 F.3d at 216. "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the

Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. " 'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.' " *Perez*, 415 F.3d at 461 (quoting *Newton*, 209 F.3d at 453).

▮▮▮ "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987). If, at any step, the Commissioner can determine that the claimant is disabled or not disabled, that ends the analysis. If, however, the Commissioner cannot make such a finding, the analysis proceeds to the next step. *Perez*, 415 F.3d at 461. Before considering the fourth and fifth steps, the Commissioner must assess the claimant's residual functional capacity ("RFC"). *Id.* "The claimant's RFC is used at both steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his [or her] past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work." *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)). The RFC assessment is a determination of the most the claimant can still do in a work setting on a regular and continuing basis, despite his or her physical and mental limitations. *Id.* at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); *Myers*, 238 F.3d at 620 (citing SSR 96–8p, 1996 WL 374184, at *1 (S.S.A.1996)). The RFC assessment must "be based on all relevant evidence in the claimant's record," *Perez*, 415 F.3d at 462, and must "include a reso-

lution of any inconsistencies in the evidence." *Myers*, 238 F.3d at 620.

## III. DISCUSSION

### A. The ALJ's Findings and Conclusions

The ALJ found, as a threshold matter, that Plaintiff's last date insured was December 31, 2006. R. 46. In Step One of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of March 1, 2005. *Id.* He determined that Plaintiff has severe impairments of residuals of mastectomy, hypothyroidism, dyslipidemia and low platelets (Step Two), but that her impairments were not severe enough to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 for which she would be found presumptively disabled (Step Three). *Id.*

The ALJ next determined that Plaintiff retained the residual functional capacity to perform sedentary work[2] "except having decreased strength in the right upper extremity and the inability to reach overhead with right upper extremity." R. 47. In so determining, the ALJ found that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected as incredible her subjective statements concerning the intensity, persistence, and limiting effects of these symptoms, finding a general lack of support for her statements. R. 48. Next, in Step Four, the ALJ found that Plaintiff was capable of performing her past rele-

---

**2.** The Regulations define "sedentary work" as work involving:

 ... lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain

amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

vant work as she actually performed.[3] R. 50. Finding that Plaintiff retained the RFC to "lift no more than 10 pounds at a time, sit 6 hours in an 8 hour workday and walk and stand for 6 hours in an 8 hour workday," the ALJ determined that Plaintiff could still do work at this level. *Id.* Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act. *Id.*

## B. Analysis of Plaintiff's Claim

In her sole issue presented on appeal, the Plaintiff complains that the ALJ erred in finding that she can perform her past relevant work. Pl.'s Br. 2. In Finding Six of the ALJ's opinion, the ALJ sums up his step-four analysis, stating: "Through the date last insured, the claimant was capable of performing past relevant work as a clerical worker. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565)." R. 50. Importantly, in Finding Five regarding Plaintiff's RFC, which precedes his step-four analysis, the ALJ states that "through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(b) *except having decreased strength in the right upper extremity and the inability to reach overhead with right upper extremity.*" R. 47 (emphasis added).

Specifically, Plaintiff points out that the ALJ's RFC finding limits Plaintiff by "decreased strength in the right upper extremity" and by the "inability to reach overhead with right upper extremity," but that the ALJ erroneously failed to consider those limitations when he made his finding that Plaintiff retains the ability to perform her past relevant work. Pl.'s Br. 3. Plaintiff goes on to contend:

> In a Work History Report—Form SSA–3369, Plaintiff describes her past work as requiring the ability to handle, grab or grasp big objects six hours per day, and the ability to reach two hours per day. (Tr. 120). Plaintiff testified that she is right hand dominant. (Tr. 21). Hence, her limited ability to use her right hand due to decreased strength and inability to reach overhead with that hand would prevent Plaintiff from performing this job as she actually performed it in the past.

Pl. Br. 4. Plaintiff's claim on appeal boils down to a complaint that in finding that Plaintiff can perform her past relevant work, the ALJ erred by failing to make a function-by-function comparison of the above-stated limitations against two specific physical demands of her past relevant work: (1) handling, grabbing or grasping big objects (collectively "handling") and (2) reaching.

Accordingly, to resolve Plaintiff's complaint on appeal, the Court is tasked to determine whether substantial evidence supports two findings by the ALJ. *See Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999) ("It is axiomatic that all of the ALJ's required findings must be supported by substantial evidence." (citing 42 U.S.C. § 405(g))). First, although Plaintiff does not challenge the ALJ's finding that her RFC is further limited by "decreased strength in the right upper extremity" and by the "inability to reach overhead with right upper extremity," the Court must

---

**3.** Contrary to Plaintiff's assertion that "[t]he ALJ does not state whether he finds that Plaintiff can perform her past work as she actually performed it, or as it is normally performed in the national economy," Pl.'s Br. 3, the ALJ determined that Plaintiff could return to her past relevant work as she actually performed it. R. 50 ("[T]he undersigned finds that the claimant was able to perform it as *actually performed.*" (emphasis added)).

review that portion of the ALJ's finding to the extent that it serves as the linchpin of her argument on appeal. Second, the Court must assess whether substantial evidence supports a finding that Plaintiff was capable of performing her past relevant work in light of its handling and reaching demands as advanced by Plaintiff here.

### 1. The ALJ's Finding That Plaintiff's RFC is Further Limited by Decreased Strength in the Right Upper Extremity and the Inability to Reach Overhead with Right Upper Extremity

■ The ALJ's formulation of the RFC in Finding Five is perplexing for at least two reasons. First, "decreased strength in the right upper extremity" is an impairment or a symptom of an impairment from which Plaintiff suffers, not a determination of her RFC, which "is an assessment of what [she] can and cannot do, not what she does and does not suffer from." *Howard v. Comm'r of Social Security,* 276 F.3d 235, 239 (6th Cir.2002); *see also id.* at 240 ("[T]he RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."). Second, and more critically, in stating that Plaintiff's RFC is further limited by her "inability to reach overhead with right upper extremity," the ALJ does not qualify that limitation with any language of frequency import. A literal reading of this finding suggests that the ALJ found this limitation to be a *complete* inability to reach overhead as opposed to, for example, an inability to *more than occasionally or frequently* reach overhead.

In his opinion, the ALJ does not elaborate what he meant by "inability to reach overhead with right upper extremity" or what evidence he relied upon to reach that assessment. That inquiry, however, is not an exercise in futility in light of the evidence in the record and the ALJ's analysis and conclusions of such evidence. *See Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir.2004) (stating that the ALJ need not provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to make a bridge between the evidence and his conclusions (citations omitted)); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994) (rejecting as unnecessary rule requiring ALJ to specifically articulate evidence that supported decision and discuss evidence that was rejected). A review of the record reveals that the *only* objective evidence that discusses Plaintiff's capacity to reach is a "Medical Source Statement of Ability To Do Work–Related Activities (Physical)" rendered by Plaintiff's own treating source, Physician's Assistant Brenda Silva. There, Silva opined: "Patient has decreased strength and pain—intermittent [right] upper extremity"; "[e]xamination of patient demonstrates Ms. Borrego to have decrease [sic] strength in [right] upper extremity." R. 265 (medical notations replaced by lay terms). She further explained: "Reaching would be limited with patient[']s [right upper extremity] (OK with [left] upper extremity) due to decreased strength which causes patient limited mobility." R. 266 (medical notations replaced by lay terms). Critically, Silva's opinion states that Plaintiff can "occasionally" reach in *all* directions including overhead. *Id.* This critical statement was not overlooked by the ALJ. In his discussion of Plaintiff's claim of severe pain, the ALJ carefully summarized in great detail Silva's opinion,[4] particularly remarking: "She fur-

4. The ALJ summarized Silva's opinion as fol- lows:

ther stated that the claimant could *occasionally reach all directions (including overhead)* due to decreased strength which caused claimant's limited mobility." R. 49 (emphasis added). Although the ALJ partially discredited Silva's opinion to the extent that it can be understood to lend some support for Plaintiff's claim about the severity of her pain, the ALJ clearly understood that her inability to reach overhead is not an absolute one.

With regard to subjective evidence, in the Daily Activity Questionnaire, Exhibit 4E, which the ALJ had before him at the hearing, Plaintiff alleged experiencing "weakness in right arm," suffering "severe constant pain," and her inability to "lift or carry heavy things." R. 126. Further, in response to Question 7 asking whether her physical problems limited any of the listed activities, including "reaching," Plaintiff, by employing tick marks, responded in the affirmative to all of the activities listed and added a hand-written notation stating that "I cannot be in one position for long periods of time." *Id.* at 127. At the hearing, she did not testify as to her reaching capacity, but did testify that she had no strength on her hands and that she could not pick up anything heavier than five pounds including a gallon of milk, stating that "it would probably fall off of my hand. I couldn't hold the grip. I can't grip it that good." *Id.* at 19, 21, 26, 35. The ALJ, however, found her subjective state-

ments incredible due to a general lack of support from objective evidence and stated that "the claimant's statements concerning her functional limitations are not supported by her treating and attending physician and the medical findings as she has alleged and has not imposed more than a minimal restriction of the claimant's ability to perform basic work activity." *Id.* at 49–50. *See Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir.1988) *(per curiam )* ("[S]ubjective complaints [must] be corroborated, at least in part, by objective medical findings.").

■ Credibility determinations, however, are the province of the ALJ, *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996), and accordingly, "the ALJ's determinations of the weight and credibility of the evidence 'are entitled [to] considerable deference.' " *Landfried v. Apfel,* 218 F.3d 743, 2000 WL 821361, at *4 (5th Cir.2000) *(per curiam )* (unpublished) (quoting *Jones v. Bowen,* 829 F.2d 524, 527 (5th Cir.1987)). Given that the ALJ discredited Plaintiff's subjective statements about her functional limitations, in concluding that her RFC is further restricted by her "inability to reach overhead with right upper extremity," the ALJ exclusively relied on her treating source's opinion—the only objective, medical evidence discussing such a limitation.[5] *See Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004) ("Al-

Brenda Silva, PA, the claimant's treating source, opined the claimant could occasionally lift and carry less than 10 pounds, had limited use of her upper extremities due to decreased strength and pain, could occasionally climb ramps/stairs/ladders/rope/scaffold and balance with frequent kneeling, crouching, crawling and stooping with no explanation for her limitations. She further stated that the claimant could occasionally reach all directions (including overhead) due to decreased strength which caused claimant's limited

mobility. There were no limitations on claimant's ability to sit, no limitations in visual/communicative functions and no limitations in environmental limitations.
R. 49.

5. 20 C.F.R. 404.1513(d)(1) (providing that evidence from physicians' assistants may be used to show the severity of an impairment and how it affects your ability to work); *Phillips v. Astrue,* 413 Fed.Appx. 878, 884 (7th Cir.2010) (unpublished); *Cruse v. Comm'r of Social Security,* 502 F.3d 532, 541 (6th Cir.2007).

though the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, ... a claimant's residual functional capacity is a medical question. Some medical evidence must support the determination of the claimant's RFC." (citations, internal quotation marks, and brackets omitted)). However, as discussed *supra*, that evidence only supports a finding that Plaintiff was unable to *more than occasionally* reach overhead with right upper extremity, but contradicts a finding that Plaintiff was *completely* unable to reach overhead with right upper extremity. The Court therefore finds that substantial evidence does not support a finding that Plaintiff had a *complete* inability to reach overhead with right upper extremity, but such evidence supports a finding that she had the inability to *more than occasionally* reach overhead with right upper extremity. Further, to the extent that the ALJ understood Silva's opinion as stating that Plaintiff "could occasionally reach all directions (including overhead)," the ALJ's omission of "more than occasionally" or like words in his formulation of Plaintiff's RFC was most likely an oversight.

■ Where, as here, the Commissioner's findings are not supported by substantial evidence, § 405(g) of Title 42 of the United States Code empowers the Court to modify the Commissioner's findings without remanding the cause for rehearing. 42 U.S.C. 405(g) ("The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); *Leggett v. Chater*, 67 F.3d 558, 565 n. 14, 567 (5th Cir.1995) (stating that the district court properly modified the ALJ's residual capacity finding not supported by substantial evidence and affirming that court's judgment up-

holding the ALJ's decision denying benefits). *See also Mays v. Bowen*, 837 F.2d 1362, 1363–64 (5th Cir.1988) (*per curiam*) (rejecting the claimant's argument that the lower court erroneously substituted its judgment for the judgment of the ALJ where the district court modified the ALJ's residual capacity finding for lack of support by substantial evidence and affirming that court's judgment upholding the ALJ's decision denying benefits); *Mitchell v. Apfel*, 209 F.3d 719, 2000 WL 283184, at *1 (5th Cir.2000) (*per curiam*) (unpublished) (rejecting the claimant's argument that the district court erred in modifying the ALJ's residual capacity finding where the lower court determined that there was not substantial evidence to support that finding and affirming that court's judgment upholding the ALJ's decision denying benefits (citing *Mays*, 837 F.2d at 1364)).

Accordingly, and for the foregoing reasons, the Court modifies the ALJ's Finding Five to read as follows: Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) limited by an inability to more than occasionally reach overhead with right upper extremity.

### 2. The ALJ's Finding That Plaintiff Was Capable of Performing Her Past Relevant Work

■ Having modified the RFC thusly, the Court turns to the ALJ's step-four finding that Plaintiff was capable of performing her past relevant work and that the work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. To determine whether Plaintiff could perform her past relevant work, the ALJ was required to assess the physical demands of that work. *See Villa v. Sullivan,*

895 F.2d 1019, 1022 (5th Cir.1990). "This determination may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Id.* (citation omitted). To assess the exertional and non-exertional demands of a claimant's past relevant work as actually performed, the ALJ may rely upon two sources of information: a properly completed Form SSA–3369 (Work History Report) and the claimant's own testimony. *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir.2001) ("Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82–61, and the claimant's own testimony, SSR 82–41."). Here, the record contains both a Form SSA–3369 completed by Plaintiff and her testimony about her past work.[6]

At the conclusion of his step-four analysis, the ALJ states that he "compar[ed] the claimant's residual functional capacity with the physical and mental demands of this work." R. 50; *see also id.* ("I find that the claimant can still do work at this level, based on the overall medical evidence and review of the claimant's overall record."). The Court further observes that at the hearing the ALJ had before him the Work History Report (Form SSA–3369), which appears in Exhibit 3E of the record. R. 12 ("Let's talk about the state of the record. Right now it consists of *Exhibits 1A through 8F inclusive ....*" (emphasis added) (statement of the ALJ)). Moreover, in his opinion, in assessing Plaintiff's RFC, the ALJ states that he considered "the entire case record," R. 47, and expressly referenced that report. R. 49 ("The claimant completed disability re-

ports regarding her work history, stating that she lifted 10 pounds at work which she performed through 2001.")Accordingly, even though the ALJ does not cite to the Work History Report in reaching the conclusion that Plaintiff retained the capacity to perform her past relevant work, he is presumed to have considered the contents of that report including the handling and reaching demands of Plaintiff's past work. *See Castillo v. Barnhart,* 151 Fed.Appx. 334, 335 (5th Cir.2005) (*per curiam*) (unpublished) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence." (citing *Falco,* 27 F.3d at 163)); *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000) (stating that the failure to cite specific evidence does not mean that it was not considered).

The Commissioner points out that the Plaintiff's Work History Report "does not specify the nature of reaching Plaintiff was required to do in her past work—whether it was up, down, in front, to side to side, overhead, or behind." Comm'r's Br. 6. All that the report recites is "Reach? 2." The Court notes that the term "reaching," as used by the Social Security Administration, includes reaching in any direction. SSR 85–15, 1985 WL 56857, at *7 (SSA 1985) (explaining "Reaching" as "extending the hands and arms in any direction"); *see Cranfield v. Comm'r of Social Security,* 79 Fed.Appx. 852, 858 (6th Cir.2003) (unpublished) (consulting SSR 85–15's description of "stoop"). However, it is not entirely clear from the face of the Work History Report form, whether, in describing her past work activities, Plaintiff subjectively

---

6. The Court notes that the Form SSA–3369 is unsigned, but Plaintiff on appeal appears to suggest that she filled out that form. *See* Pl.'s Br. 4 ("In a Work History Report—Form SSA–3369 *Plaintiff describes* her past work as

requiring the ability to handle, grab or grasp big objects six hours per day, and the ability to reach two hours per day." (emphasis added)).

understood the term "reach" as used in that form to include overhead reaching and therefore whether she meant to state that her past work required such function.[7] Nor has Plaintiff on appeal here pointed to any evidence in the record that conclusively indicates that her past work required her to reach overhead.

Whether her past work required overhead reaching is no more clear from her testimony at the hearing before the ALJ. Plaintiff, examined by her attorney, testified as follows:

> CLMT: Okay. I was a clerical worker and I used to take care of the piece rate papers for the, for their checks and I also worked in the shipping area and I used to be in, I used to be in charge of a line of people for the production. I did all that at the, you know, at the same day every day. And we used to do inventory control. I was also involved in the inventory control in the shipping area, shipping out boxes to their destinations.
>
> ATTY: Did you have to pick up those boxes?
>
> CLMT: No, sir. They would go on a, a rail.
>
> ATTY: A conveyor belt?
>
> CLMT: A rail, a conveyor, yes.
>
> ATTY: You just put them on the belt?
>
> ALJ: One moment, counselor. Just one moment. Mr. VE, do you have any questions? She just described her duties here and do you have any questions about what she did?
>
> VE: I did before her testimony started here, but this has cleared it up in addition to what little they give, gave me.
>
> ALJ: Okay.
>
> VE: I understand her job.
>
> ATTY: We can go on, Your Honor.

R. 18–19. Conspicuously missing from her testimony is any mention of reaching, much less overhead reaching.

■ To be sure, the ALJ had the duty " 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.' " Newton, 209 F.3d at 458 (quoting Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995)). Accordingly, the ALJ could have posed additional probing questions at the hearing or take additional appropriate steps inquiring into the handling and reaching requirements of Plaintiff's past work. See SSR 82–61, 1982 WL 31387, at *2 (S.S.A.1982) (providing that if the Work History Report contains incomplete or inaccurate description of the claimant's past work, "[e]mployer contact or further contact with the claimant[ ] may be necessary to resolve such a conflict"). Nevertheless, these duties "must be balanced against the fact that claimants bear the burden of proof up through step 4 of the evaluation process." Holifield v. Astrue, 402 Fed.

---

**7.** Mindful that "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve," Perez, 415 F.3d at 461, the Court, moreover, notes that Plaintiff's description of her past work as documented in the Work History Report is riddled with inconsistencies. For example, Plaintiff states that at her past work as a clerical worker, she worked eight hours per day. R. 120. In response to the question, "[i]n this job how many total hours each day did you: ... Stand? Sit? ...," Plaintiff responds: eight hours of standing and four hours of sitting. Id. Given that these two functions—standing and sitting—are mutually exclusive (for example, one cannot both stand and sit at the same time), her responses are nonsensical to the extent that they tally up a total of twelve hours out of an eight-hour work day. Moreover Plaintiff stated that at her past job, she frequently (meaning from one-third to two-third of the workday)'lifted and carried "men[']s garments—boxes of clothes" weighing 10 pounds. Id. Yet, at the hearing, in response to her attorney's question "[d]id you have to pick up those boxes?", she replied: "No, sir." Id. at 20.

Appx. 24, 26 (5th Cir.2010) (*per curiam*) (unpublished) (citing *Audler*, 501 F.3d at 448). At the hearing, Plaintiff, who had the burden to prove that she was no longer capable of performing her past relevant work, *see Newton*, 209 F.3d at 453, and who was aided and examined by her attorney, could have taken the opportunity to clarify or elaborate on whether her past work required overhead reaching, but opted not to do so.[8]

In any event, even assuming, *arguendo*, that Plaintiff's Work History Report accurately describes the handling and reaching functions of her past relevant work and that reaching as described in that report includes overhead reaching, the Court finds that substantial evidence supports a finding that Plaintiff, consistent with the RFC as modified, was capable of performing those functions. In the "Medical Source Statement of Ability To Do Work–Related Activities (Physical)," discussed *supra*, Plaintiff's treating source opined that Plaintiff is *unlimited* in handling and fingering. R. 266. With regard to the reaching demand of Plaintiff's past relevant work, the Work History Report indicates that she was required to perform that function for two (2) hours out of an eight-hour work day. That is to say, she was required to perform reaching—including reaching overhead, if any—*occasionally*. *Hensley v. Astrue*, 573 F.3d 263, 265 (6th Cir.2009) ("[I]n social security disability cases the word 'occasionally' is a term of art: it means up to one-third of someone's working time."). As mentioned previously, Plaintiffs treating source also opined that Plaintiff could occasionally perform reaching in all directions, including overhead. R. 266.

## IV. CONCLUSION

Based on the forgoing, **IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.

---

8. *See Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir.2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the [Dictionary of Occupational Titles], and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."); *accord, Barratt v. Astrue*, 2008 WL 2325636, at

*2–*3 (5th Cir.2008) (*per curiam*) (unpublished) (rejecting the claimant's argument that the ALJ reversibly erred in concluding that he could perform other work in the national economy because the ALJ relied on testimony from a vocational expert ("VE") that conflicted with the Dictionary of Occupational Titles and noting that the claimant's counsel had the opportunity to cross-examine the VE regarding the classification of the jobs she cited, but opted not to do so).