# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 01-51137

---

JOHN F. MASTERSON, JR.,

Plaintiff-Appellant,

VERSUS

JO ANNE B. BARNHART,[*]
COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

September 4, 2002

---

[*] Jo Anne B. Barnhart is automatically substituted for the previous Commissioner. *See* 42 U.S.C. § 405(g); FED. R. CIV. P. 25(d)(1).

Before DAVIS, SMITH, and BENAVIDES,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

John Masterson appeals a judgment entered by the magistrate judge, sitting by consent of the parties (hereinafter the "district court" or the "court"), affirming the Social Security Commissioner's decision to deny his application for disability benefits. Concluding that substantial evidence supports the administrative law judge's ("ALJ's") denial of benefits, we affirm.

I.

Masterson, an accountant by training, applied for Social Security disability benefits in 1994, claiming he had suffered from post-traumatic stress disorder ("PTSD") since 1993 because of his combat service in Vietnam. Masterson contended that PTSD contributed to an inability to work with others, fear of the future, and intrusive thoughts. Despite these alleged symptoms, he acknowledged that he still could perform everyday tasks and tend to his personal needs.

After Masterson's application was denied initially and on reconsideration, he requested a *de novo* hearing before an ALJ, who considered Masterson's medical history and potential evidence of PTSD. Medical records from the Veteran's Administration ("VA") indicate that Masterson had complained of depression and PTSD in 1991. The treating physician, however, ruled out PTSD and diagnosed dysthymia. Masterson then began psychotherapy. In December 1991, a VA physician reported that Masterson had some PTSD symptoms and prescribed anti-depressant medication.

Masterson was first diagnosed with PTSD in October 1992. The diagnosing psychotherapist also established a working diagnosis of alcohol dependence by history, and a probable personality disorder, not otherwise specified, with dependent, self-defeating features. In November 1992, the psychotherapist identified the working diagnoses as PTSD, dysthymia, and alcohol dependence in remission.

In April 1994, the VA provided a "Rating Decision" that Masterson was unemployable and entitled to individual unemployability benefits. The Rating Decision stated that Masterson was depressed and anxious, that the VA examiner found him moderately to severely impaired in his occupational functioning, and that he had service-connected disabilities for shell fragment wounds to the left chest and left arm.[1] VA medical records also indicate that Masterson had sleep apnea, which was well controlled with medication and a breathing apparatus.

In January 1995, Dr. George Robison performed a consultative medical examination at the request of the Texas Rehabilitation Commission. Masterson reported that he had back pain, but no radiation, and that he did not find the pain limiting. Robison reported Masterson's past medical history of PTSD and noted that Masterson's hearing, emotional affect, and gross mental status were normal.

Also in January 1995, Dr. Stuart Nemir, Jr., performed a consultative psychological examination requested by the Texas Rehabilitation

---

[1] Masterson was hospitalized briefly in 1994 for chest pain caused primarily by his history of pleurisy or costochondritis. The discharge diagnosis was costochondritis with atypical chest pain and mild chronic obstructive pulmonary disease.

Commission. Masterson reported to Nemir that he was active in Alcoholics Anonymous, that he had a good relationship with his four sons, and that his daily activities included preparing meals for himself and his son, driving his son to school, doing household chores, visiting with acquaintances on the phone, working with the computer, engaging in leisure activities, and keeping up with current events through television and the newspaper. Nemir observed that Masterson was alert and his affect was appropriate; he saw no signs of depression or thought disorder.

Nemir diagnosed personality disorder, not otherwise specified, and sleep disorder. Nemir concluded that if Masterson "has PTSD, it certainly is atypical" and that "[w]ith this man's educational background and talent together with his intelligence, I think the prognosis for him is fair to good."

In June 1995, Robert O'Brien, Ph.D., another VA psychotherapist, reported that Masterson continued to experience recurrent combat memories and nightmares and demonstrated markedly diminished interest and participation in significant activities. O'Brien opined that Masterson had moderate problems in performing activities of daily living, moderate difficulty in maintaining social functioning, and frequent problems with concentration, persistence, and pace that resulted in a failure to complete tasks in a timely manner. O'Brien also indicated that Masterson often failed to start even simple tasks, such as returning phone calls. He assessed chronic PTSD secondary to combat service and wounding in Vietnam, dysthymia secondary to PTSD, guilt, and sense of failure.

The ALJ also heard testimony at the hearing in June 1996 from Masterson, a medical expert, and a vocational expert. Masterson testified that he was forty-seven years old with a masters degree in accounting. He said he had difficulty sleeping, headaches, high frequency hearing loss, skin problems, sleep apnea, polyps on his colon, and depression. He identified an inability to concentrate as the main reason he could not work. He stated that he occasionally experienced chest pain, which medication resolved within one minute.

Masterson also testified that at his last job, he had threatened to assault two persons who had said something about the men who died in Vietnam being losers. He stated that he had begun to hurt people years ago but had been able to stop and that he had not assaulted anyone since 1982. He said, however, that he recently had hit his twenty-one-year-old son in the side of his head but did not injure him.

Masterson stated that he did laundry once a month, went grocery shopping late, watched television, occasionally watched movies with his son, read, played solitaire on the computer, and attended Alcoholic Anonymous meetings, after which he often would join others for a meal. He attended therapy and lunched weekly with four friends, who were also combat veterans.

Dr. Joe Berry, a psychiatrist with forty-two years of experience, testified as a medical expert and noted that the medical records showed diagnoses of PTSD, alcohol dependency, dysthymia, and a personality disorder. Berry stated that Masterson's testimony did not sustain a diagnosis of PTSD. He also testified that, based on the medical evidence, Masterson had slight restrictions on daily activities, slight to moderate difficulties in social functioning, and seldom to often-experienced deficiencies of concentration. On

cross-examination, Berry testified that, based on Masterson's testimony, Masterson would have moderate to marked restrictions of daily activities and moderate to marked difficulties in maintaining social functioning, and he often would experience deficiencies in concentration.

Dr. Robert Marion, Professor of Special Education and Rehabilitation at the University of Texas at Austin, testified as a vocational expert and opined that Masterson had skills transferrable to sedentary and light jobs, given his education and age. Marion also said that sedentary and light jobs not requiring much interaction with the public existed in significant numbers in the national economy.

Marion identified several sedentary jobs that Masterson could perform without exposure to stressful situations and with less public interaction than his previous accounting jobs required: assembly worker, order clerk, appointment clerk, and security officer. Marion also identified several suitable non-stressful light jobs: mail clerk, general office clerk-gopher, and assembly worker. Marion testified, however, that Masterson could not perform any of these jobs if he lost his concentration fifty percent of the time, as Masterson had testified he did.

The ALJ denied Masterson's application for benefits and made eight main determinations: (1) that Masterson had not had substantial gainful activity since March 31, 1993; (2) that Masterson suffered from obstructive sleep apnea and personality disorder but did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1.; (3) that Masterson was not disabled within the meaning of the Social Security Act; (4) that Masterson's allegations of disabling symptoms were not fully credible; (5) that the medical evidence did not support the VA's PTSD diagnosis; (6) that Masterson had the residual functional capacity to perform sedentary and light work not involving exposure to stressful situations or dealing with the public; (7) that Masterson had skills transferrable to sedentary and light work; and (8) that Masterson was able to perform work existing in significant numbers in the national economy.

The Appeals Council denied Masterson's request to review the ALJ's decision on the merits. The Council reviewed the evidence presented to the ALJ, as well as new evidence submitted by Masterson, namely, a report by Dr. Kevin McFarley dated September 22, 1997.

McFarley reported that Masterson was currently functioning at the "Very Superior (Mentally Gifted)" range of overall intellectual ability. Although Masterson did not indicate any significant area of cognitive or intellectual deficit, McFarley stated that Masterson could not engage in productive work because of his ruminations, psychological problems, and severe interpersonal problems. McFarley diagnosed PTSD and recurrent, moderate major depressive disorder. McFarley also stated that Masterson was not malingering and that he was "currently completely disabled by the psychological and emotional effects of his combat experience."

The Appeals Council concluded that McFarley's report did not justify a review of the ALJ's decision on the merits, much less a reversal of the ALJ's decision. The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council

4

denied Masterson's request for review on the merits. Masterson sought judicial review of the ALJ's decision in the district court on February 15, 2000.

## II.
### A.

A claimant bears the burden of proving that he suffers from a disability, which the Social Security Act defines as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *Newton*, 209 F.3d at 452.[2] The Commissioner follows a five-step sequence to evaluate claims of disability: whether (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets or equals the severity of a listed impairment in Appendix 1 of the regulations, (4) the impairment prevents the claimant from performing past relevant work, and (5) the impairment prevents him from doing any other work. 20 C.F.R. § 404.1520; *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

If the claimant satisfies the first four steps with sufficient proof, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial work in the national economy. *Newton*, 209 F.3d at 453; *Chapparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. *Chapparro*, 815 F.2d at 1010. A finding that the claimant is not disabled at any step is conclusive and ends the inquiry. *Greenspan v. Shalala*, 38 F.3d 232,

---

[2] "Substantial gainful activity" is work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a)-(b).

235 (5th Cir. 1994).

### B.

We review the denial of benefits only to ascertain whether substantial evidence supports the final decision and whether the Commissioner used the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Newton*, 209 F.3d at 452; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). We affirm the Commissioner's findings whenever supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173. Substantial evidence "is more than a mere scintilla and less than a preponderance." *Newton*, 209 F.3d at 452 (citations omitted). We will not re-weigh the evidence, try the questions *de novo*, or substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision. *Id.* at 452. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (citations and internal alterations omitted).

### C.

Masterson challenges the ALJ's three main factual findings. According to Masterson, substantial evidence does not support the ALJ's findings that Masterson does not suffer from PTSD, that he is not otherwise disabled, and that he had the residual functional capacity to perform sedentary and light work not involving exposure to stressful situations or dealing with the public. We disagree; substantial evidence supports all three findings.

The ALJ received conflicting evidence on whether Masterson suffered from PTSD. The VA originally diagnosed Masterson with PTSD in October 1992, nearly a year after he first obtained treatment from the VA. Nemir, who performed the consultative psychological

exam for the Texas Rehabilitation Commission in January 1995, diagnosed Masterson only with an unspecified personality disorder. Moreover, he commented on the VA's diagnosis of PTSD by remarking that if Masterson had PTSD, it was certainly an "atypical" version. Likewise, Berry testified that Masterson did not suffer from PTSD. Berry admitted that Masterson might suffer from PTSD, but only if one took Masterson's testimony as true.

The ALJ, though, found Masterson's testimony less than fully credible. The ALJ carefully considered this and other evidence and concluded that Masterson did not suffer from PTSD. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (stating that ALJ has the responsibility to resolve conflicting medical opinions); *Chapparro*, 815 F.2d at 1011 (stating that ALJ has the responsibility to resolve questions of credibility). Given Nemir's findings and Berry's testimony, substantial evidence supports the ALJ's conclusion that Masterson did not suffer from PTSD.

The ALJ also concluded that Masterson is not otherwise disabled, despite finding that he suffered from a sleep apnea and a personality disorder. The ALJ found, however, that Masterson's sleep apnea is well controlled with medication. Masterson does not challenge this finding on appeal. Berry testified that Masterson's unspecified personality disorder was not sufficiently severe to qualify for disability benefits. *See* 20 C.F.R. Part 404, Subpart B, Appendix 1, Listing 12.08 ("Personality Disorders"). Although Berry admitted on cross-examination that Masterson's unspecified personality disorder might qualify under the listing if one took Masterson's testimony as true, the ALJ did not fully credit Masterson's testimony. Given Berry's testimony and

the ALJ's finding that Masterson was not entirely credible, substantial evidence supports the ALJ's conclusion that Masterson was not otherwise disabled.

Finally, the ALJ concluded that Masterson had the residual functional capacity to perform sedentary and light work not involving exposure to stressful situations or dealing with the public. The ALJ expressly and rightly relied on the testimony of Marion, the vocational expert, in reaching this conclusion. *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (the ALJ may rely on vocational expert's testimony). Masterson offered no contrary evidence and thus did not satisfy his burden to prove that he could not perform the kinds of jobs identified by Marion.

Masterson objects that the ALJ asked Marion improper hypothetical questions about Masterson's abilities, but the record clearly reflects that the ALJ scrupulously incorporated into the hypothetical questions all of Masterson's disabilities supported by evidence and recognized by the ALJ.[3] *See*

---

[3] Masterson relies in part on McFarley's report to attack the ALJ's hypothetical question. Yet, Masterson did not submit the report to the ALJ at all; rather, he obtained the report after the ALJ's decision and submitted it to the Appeals Council to support his request for a review of the ALJ's decision on the merits. The Appeals Council considered the report, as it must under 20 C.F.R. § 404.970(b), but concluded that the report did not justify reviewing the case on the merits.

We do not understand what Masterson would have us do with McFarley's report. Masterson might have argued that the court should remand to the ALJ for reconsideration in light of the report. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d
(continued...)

6

*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). Furthermore, Masterson had the opportunity to cross-examine Marion about the hypothetical questions. Given Marion's testimony and Masterson's failure to refute the testimony, substantial evidence supports the ALJ's finding that Masterson could perform sedentary and light jobs not involving much stress or public interaction.

AFFIRMED.

---

[3](...continued)
552, 554-55 (5th Cir. 1995). Yet, Masterson does not request a remand in light of the new evidence, so he has waived the argument. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (stating that questions not briefed on appeal are waived).

Alternatively, Masterson might have argued that we should use McFarley's report as grounds to reverse the ALJ's decision. We have not decided the question whether new evidence presented to the Appeals Council for its decision on whether to review the ALJ's ruling on the merits but not presented to the ALJ is part of the record for the district court to review when the Appeals Council did not consider the ALJ's ruling on the merits.

This question has split the circuits. *Compare Matthews v. Apfel*, 239 F.3d 589, 593-94 (3d Cir. 2001) (holding that such evidence is not part of the record for a district court to review); *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (same); *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993) (same) *with Perez v. Chater*, 77 F.3d 41, 44-45 (2d Cir. 1996) (holding that such evidence is part of the record for a district court to review); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (same); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994) (same), *but see Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (same); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992) (same); *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc) (same). The First Circuit adopts neither position and instead reviews the ALJ's decision only on the evidence presented to the ALJ, but reviews the Appeals Council's decision to refuse review when the Council gives an egregiously mistaken ground for its decision. *See Mills v. Apfel*, 244 F.3d 1, 4-5 (1st Cir. 2001).

(continued...)

---

[3](...continued)
Again, however, Masterson does not raise this argument on appeal; he simply assumes that McFarley's report is part of the record for review before the district court and this court. We are unwilling to accept this assumption or to decide, without proper briefing, a question that has split the other circuits. *Thibodeaux*, 211 F.3d at 912 (5th Cir. 2000) (opining that questions not briefed on appeal are waived). Moreover, the report would not change the outcome of this appeal, because the report merely diagnoses PTSD after the claim period and without reference to Masterson's medical history during the claim period. *Cf. Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1988) (holding that diagnoses after the claim period are immaterial to remand requests). We therefore reserve the question for another day when properly presented and briefed.