# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20363
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2015

Lyle W. Cayce
Clerk

JOHN W. HAMILTON-PROVOST,

Plaintiff - Appellant

v.

CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-2585

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

John Hamilton-Provost was denied benefits under Title II and Title XVI of the Social Security Act. On appeal, Hamilton-Provost raises several challenges to the Commissioner's finding that he was not disabled.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

* "R." refers to the Bates-stamped page numbers of the paper administrative record. "ROA." refers to the electronic record on appeal.

No. 14-20363

## I.

In 2004, Hamilton-Provost applied for supplemental security income benefits (SSI) under Title XVI and disability insurance benefits under Title II. He alleged that he had been disabled since December 14, 2002 as a result of visual and mental health impairments. After Hamilton-Provost's application was denied initially and on reconsideration, an Administrative Law Judge (ALJ) held a hearing in July 2008.[1] The ALJ concluded that Hamilton-Provost was not disabled, and the Appeals Council denied review. Hamilton-Provost sought judicial review in federal district court, which resulted in the court remanding the case to the Commissioner with instructions to consider medical records which were not reviewed at the 2008 hearing. On remand in 2011, a different ALJ also concluded that Hamilton-Provost was not disabled. In 2012, the Appeals Council denied review of the Title II claim, but granted review of the Title XVI claim and affirmed the ALJ's decision with modifications. Hamilton-Provost again filed suit in federal district court. After considering the parties' cross-motions for summary judgment, the district court concluded that substantial evidence supported the Commissioner's finding of no disability. This appeal followed.

The factual record in this case is detailed and lengthy. We summarize the relevant facts. Hamilton-Provost testified at the administrative hearings that he was 51 years old at the time of his alleged disability onset, had earned a general equivalency diploma, and could perform various physical tasks (including lifting up to fifty pounds). He also testified that he wore a prosthetic in his right eye, could only see shadows out of his left eye, used Braille to read, did not wear glasses because they did not help him, and used a cane and escort

---

[1] An administrative hearing had been held in July 2006, but Hamilton-Provost failed to appear. Upon request by Hamilton-Provost, the Appeals Council remanded the case for another hearing, which resulted in the 2008 hearing.

No. 14-20363

to get around. At both hearings, Hamilton-Provost appeared *pro se* and telephonically because he was, and continues to be, incarcerated on a life sentence for robbery. He began serving his sentence in 2008, and the case is currently on appeal. As the district court noted, Hamilton-Provost's incarceration potentially complicates his eligibility for benefits.

A Vocational Expert testified in 2008 that Hamilton-Provost had last worked in 1993 and had past relevant work experience as a general laborer, detailer, tank cleaner, and delivery driver. The expert also testified that a person with Hamilton-Provost's age, education, work experience, and residual functional capacity could work as a detailer, laundry worker, industrial cleaner, and dining room attendant, and that these jobs existed in significant numbers in the national economy. A different Vocational Expert testified in 2011 that a person with Hamilton-Provost's residual functional capacity could continue to work as a general laborer.

The record also documents the medical history surrounding Hamilton-Provost's alleged impairments. Between 2003 and 2008, various physicians examined Hamilton-Provost or reviewed his ophthalmological records. An August 2003 examination diagnosed Hamilton-Provost with "profound visual loss" with "no apparent cause" and concluded that he was "most likely malingering." R.350–51. Later that month, a review of Hamilton-Provost's records concluded that "[n]o objective clinical findings [supported] the apparent impairment of . . . vision suggested by subjective test responses." R.359. The doctor further concluded that "[a] severe visual impairment was not established on the basis of medical evidence." R.359. An April 2004 examination recorded Hamilton-Provost's left-eye vision as 20/200 without correction. An August 2004 examination concluded that if Hamilton-Provost "has loss of vision due to organic disease, it is masked by functional overlay," and opined that the prognosis was "[g]ood for retention of

3

vision." R.360–61. A September 2004 review of the medical records concluded that there was "no severe pathology of [the] left eye," and that the "subjective blindness of [the] left eye is not supported." R.364. Finally, a November 2008 examination diagnosed a left-eye vision of 20/200 with correction.[2]

Hamilton-Provost's records also reflect a history of mental health assessments. In August 2004, a physician conducted a mental status report and noted that Hamilton-Provost had a history of depression and anxiety and that his mood and affect were depressed; the report also concluded, however, that his memory, attention, concentration, insight, judgment, and ability to relate to others and sustain work were all fair. At a September 2004 examination, Hamilton-Provost complained of feeling depressed and of difficulty interacting with people. The examining doctor noted that Hamilton-Provost's "mood was sad" and that his "thought processes were logical, goal-directed, relevant, and coherent." R.367. The doctor assessed a moderate impairment in functioning,[3] and concluded that "[p]rognosis is fair with continuation of treatment, psychosocial support, and rehabilitation." R.368. In October 2004, a state agency Ph.D. reviewed the psychiatric records and concluded that Hamilton-Provost's condition did not meet the criteria for Listing 12.04 (Affective Disorders) or Listing 12.06 (Anxiety-Related Disorders), both of which would automatically establish disability under the Act. At a July 2008 examination, Hamilton-Provost reported that he had been experiencing auditory hallucinations and that he was experiencing distressing

---

[2] This is one of the three examinations which the district court ordered the Commissioner to consider on remand.

[3] The examiner assessed a Global Assessment Functioning score of 55, which entails: "Moderate Symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2000).

symptoms. The examining doctor observed that Hamilton-Provost was: calm, cooperative, goal-directed and rational, exhibited clear and concise speech, exhibited no psychotic or anxious symptoms, and was mildly depressed. Later that month, another examination concluded that all objective indicators were normal except for a "slightly depressed and anxious" mood.[4]  R.428.

## II.

Federal courts have jurisdiction to review the final decision of the Social Security Commissioner pursuant to 42 U.S.C. § 405(g). Judicial review "of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "more than a mere scintilla and less than a preponderance," *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002), and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). "In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Perez*, 415 F.3d at 462 (internal citation omitted). In applying this standard of review, we may not reweigh the evidence or "substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. Conflicting evidence is for the Commissioner, not the courts, to resolve. *Id.*

---

[4] The July 2008 examinations constitute the other two of a total of three examinations that the district court ordered the Commissioner to consider on remand.

No. 14-20363

Although Social Security disability insurance and SSI are separate and distinct programs, Hamilton-Provost's entitlement to benefits under either program requires him to establish a "disability" under the Act. *See* 42 U.S.C. § 423(a)(1) (eligibility requirements for disability insurance); 42 U.S.C. §§ 1381a (eligibility requirements for SSI). Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI). To determine whether the claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals an impairment listed in the regulations; (4) whether the claimant is capable of returning to his previous work; and (5) whether the claimant is capable of performing any other work. *Perez*, 415 F.3d at 461 (internal citations omitted). Before proceeding to step four, the Commissioner must evaluate the claimant's residual functional capacity (RFC)—"a determination of the most the claimant can still do despite his physical and mental limitations." *Id*. at 461–62. The RFC is used at step four to determine if the claimant can continue to perform his past relevant work; at step five, the RFC is used to determine whether the claimant is capable of performing any other work. *Id*. at 462. The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step. *Id*. at 461.

**III.**

Hamilton-Provost first argues that the Commissioner's decision is not supported by substantial evidence. Specifically, he challenges the Commissioner's findings at steps three, four, and five of the disability inquiry.

No. 14-20363

After the remand from the district court, the ALJ found at step three that Hamilton-Provost's impairments did not meet or equal impairments listed in the regulations. The ALJ then assessed Hamilton-Provost's RFC, finding:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ropes, ladders or scaffolds, no working at unprotected heights or around dangerous moving machinery, simple routine work environment, no highly detailed work and none requiring sustained concentration or attention for prolonged periods, only occasional interaction with the general public, no driving, and no work that requires good depth perception.

R.547. Based on this RFC, the ALJ found that Hamilton-Provost was capable of performing his past relevant work as a general laborer and thus made a no-disability finding at step four of the inquiry. The Appeals Council in 2012 denied review of the Title II disability insurance claim, rendering the ALJ's decision the final decision of the Commissioner, but granted review of the SSI claim, which was based on a different time frame.[5] The Appeals Council agreed with the RFC determination, but concluded that stage four denial was inappropriate for the Title II claim. The Appeals Council proceeded to step five, at which point it adopted the testimony of the Vocational Expert from 2008 that Hamilton-Provost was capable of performing other work. The Appeals Council thus affirmed the ALJ's no-disability finding for the Title II claim on this modified basis.

---

[5] For the Title II disability insurance claim, the relevant time period is December 14, 2002 (the alleged disability onset date) through December 31, 2006 (the last date on which Hamilton-Provost met the Act's insured requirement). The relevant time period for the SSI claim is December 14, 2002 through July 25, 2011 (the date of the ALJ's decision). The Appeals Council modified the SSI decision because Hamilton-Provost's work as a general laborer in 1993 was more than 15 years prior to the 2011 decision (the end-date of the relevant time period for the SSI claim), and was therefore too remote in time to qualify as "past relevant work." *See* 20 C.F.R. § 416.960(b)(1). This was not an issue with respect to the Title II disability insurance claim because Hamilton-Provost's past relevant work was within 15 years of his last insured date of December 31, 2006.

No. 14-20363

We conclude that substantial evidence supports the Commissioner's decision. In making his determination, the ALJ first considered Hamilton-Provost's testimony regarding his symptoms and conditions; the ALJ found the testimony not credible, noting Hamilton-Provost's multiple felony convictions.[6] The ALJ also reviewed the objective medical evidence, as well as opinions and diagnoses, including the 2008 eye and psychiatric examinations that the district court instructed the Commissioner to consider on remand. As to the visual impairment, Hamilton-Provost contends that the November 2008 eye examination satisfies the requirements of Listing 2.02, requiring a disability finding in his favor at step three.[7] But the ALJ considered that examination and accorded it little weight on the grounds that it did not provide a reason why Hamilton-Provost was legally blind and was inconsistent with the reports of malingering. The ALJ instead found that the allegations of statutory blindness were not credible, a determination squarely within his province.[8] *See Masterson*, 309 F.3d at 272. The RFC nevertheless accounts for visual problems by restricting work requiring driving, climbing, unprotected heights, or good depth perception. Substantial evidence in the record supports the ALJ's conclusion, including the examinations from August 2003, April 2004, and August 2004; and the medical record review from September 2004.

---

[6] Prior to the life sentence he is currently serving for robbery, Hamilton-Provost was incarcerated for felony theft from approximately 1970–1972, for attempted murder from 1978–1990, and for a parole violation from 1999–2001.

[7] Listing 2.02 pertains to loss of visual acuity and is satisfied when the remaining vision in the claimant's better eye, after best correction, is 20/200 or less. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.02 (defining loss of central visual acuity as "[r]emaining vision in the better eye after best correction is 20/200 or less").

[8] Hamilton-Provost also argues that his impairment meets Listing 2.03, which pertains to contraction of the visual field in the better eye, but he merely recites the diagnostic criteria of the listing and points to no objective medical evidence supporting his assertion. The claimant bears the burden of proving presumptive disability under the regulations at step three of the five-step inquiry. *Perez*, 415 F.3d at 461. The ALJ determined that Hamilton-Provost did not carry his burden, specifically finding that Hamilton-Provost's subjective allegations of visual impairment were not credible. .

No. 14-20363

On appeal to this court, Hamilton-Provost offers for the first time an examination dated February 2014, which diagnoses a left-eye vision of 20/200 with correction. The examination was performed by Dr. George Steed, the same physician who diagnosed a left-eye vision of 20/200 with correction in November 2008. A district court may remand the case to the Commissioner if "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See* 42 U.S.C. § 405(g). The statute does not expressly allow for, and we could find no case permitting, new evidentiary submissions in the court of appeals. We need not reach this question, however, because remand based on new evidence would not be appropriate even if it were generally allowed at this late stage.

Evidence is material if there is "a reasonable possibility that it would have changed the outcome of the [ALJ's] determination." *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). The examination at issue was not performed until approximately nineteen months after the Appeals Council reviewed the ALJ's decision, and so it is not probative of whether Hamilton-Provost was disabled at the time the Commissioner issued her decision.[9] *Cf. Perkins v. Shalala*, 36 F.3d 90, 95 (5th Cir. 1994) (holding that district court erred in finding medical records offered for the first time before it were not new and material evidence, and remanding to Commissioner on grounds that the claimant "made a strong showing that the 'new' evidence presented confirms that he suffered from a [disability] *at the time that the ALJ denied the benefits*")

---

[9] This situation is quite different from that surrounding the November 2008 records. There, the eye examination was conducted two weeks before the ALJ issued his decision in 2008. It is not clear if those records were available to the ALJ, but it is undisputed that they were available to the Appeals Council. The district court thus remanded the case because the Commissioner failed to consider this evidence. *Cf. Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that evidence presented for the first time to the Appeals Council is part of the administrative record because the Commissioner's decision is not final until the Appeals Council issues its decision).

No. 14-20363

(emphasis added).     Further, remand is not appropriate "solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (noting that "subsequent deterioration, however, may form the basis for a new claim").  The ALJ found that the claims of statutory blindness were not credible, and substantial evidence supported his finding.     The February 2014 examination is thus relevant, if at all, only as evidence of subsequent deterioration of a non-disabling condition.  Remand to the agency on these grounds is not appropriate.

As to the mental health impairment, Hamilton-Provost contends that his condition satisfies the requirements of Listing 12.04, requiring a disability finding in his favor at step three.[10]     But the ALJ considered all of the psychiatric evidence (as well as Hamilton-Provost's subjective claims) and concluded that the record did not establish that Listing 12.04 was met.  At step four, the ALJ concluded that no objective medical evidence showed the impairment to be so severe that Hamilton-Provost could not work within the

---

[10] Listing 12.04 pertains to affective disorders and is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." *See* 20 C.F.R. pt. 404, subpt. P, app.1, § 12.04.  To meet Listing 12.04, the claimant must satisfy the requirements listed in both paragraphs A and B of the regulation, or paragraph C. *See id.* As relevant to this case, paragraph B requires a medically documented persistent syndrome to result in at least two of the following: (1) marked restrictions of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in concentration, persistence, or pace; or (4) repeated episodes of extended decompensation. *See id.* As relevant to this case, paragraph C requires a medically documented "chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work," and either: (1) repeated episodes of decompensation, each of extended duration; (2) such marginal adjustment that a minimal increase in mental demands or change in environment would cause decompensation; or (3) a history of at least one years' inability to function outside a highly supportive living arrangement. *See id.* The ALJ found that the evidence did not satisfy paragraph B or paragraph C.  Specifically, the ALJ found that Hamilton-Provost did not have marked restrictions or difficulties with daily life, social functioning, or ability to sustain focused attention and concentration for prolonged periods of time, and that there was no evidence that he was unable to function outside of his home or that slight changes in his mental demands or environment would result in "decompensation."

No. 14-20363

RFC's limitations, which restrict work requiring a high level of detail, sustained concentration for prolonged periods, or more than occasional interaction with the general public. Substantial evidence in the record supports the ALJ's decision, including the August 2004 report (noting that Hamilton-Provost's memory, attention, concentration, insight, judgment, and ability to relate to others and sustain work were all fair) and the September 2004 examination (assessing his functioning as moderately impaired but giving a fair prognosis).[11]

Hamilton-Provost also argues that the Commissioner erred at step five by adopting the testimony of the Vocational Expert from the 2008 hearing. The Appeals Council has broad authority to modify the ALJ's decision. *See* 20 C.F.R. §§ 404.979, 416.1479 ("The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision."). The RFC that the Vocational Expert considered in 2008 was, in all relevant respects, substantially similar to the RFC assessed in 2011.[12] Further, Hamilton-Provost was present by telephone at the 2008 hearing; when asked if he had any questions for the Vocational Expert following her testimony, he responded: "No, sir." R.486. The Commissioner satisfied her step five burden of showing that Hamilton-Provost is capable of performing other work that exists in the local or national economy, and Hamilton-Provost failed to rebut this showing.

---

[11] Hamilton-Provost also argues that his impairment meets Listing 12.06 (Anxiety-Related Disorders). For the same reasons we discussed in connection with his Listing 2.03 claim, this argument fails. *See supra* note 8 and accompanying text.

[12] The 2008 RFC contained restrictions accommodating the mental health impairment (no highly detailed work, occasional interaction with the general public, no work requiring sustained concentration or attention for prolonged periods) and the visual impairment (no work requiring good depth perception). The 2011 RFC incorporated all of these restrictions and added more; the additional limitations, however, do not meaningfully change the nature, scope, and purpose of the restrictions in the 2008 RFC.

Hamilton-Provost next argues, for the first time in the long history of his case, that the Commissioner did not apply the correct legal standard in declining to give weight to Dr. Steed's November 2008 opinion and diagnosis. "Arguments not raised in the district court cannot be asserted for the first time on appeal." *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004). Nonetheless, we note that his argument fails on the merits. Hamilton-Provost contends that the ALJ was required under *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) to address the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d) before rejecting Dr. Steed's opinion. But *Newton* stated that the ALJ is required to do so "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." 209 F.3d at 453. Here, Dr. Steed's opinion was controverted by evidence from other examining and treating physicians.

In sum, we agree with the thorough reasoning of the district court and conclude that the Commissioner's decision is supported by substantial evidence in the record and that the Commissioner did not apply the incorrect legal standard in arriving at her decision.[13]

## IV.

The judgment of the district court is AFFIRMED.

---

[13] In light of our holding, we need not address the impact of Hamilton-Provost's incarceration on his eligibility for benefits.

12