# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2023

Lyle W. Cayce
Clerk

————————

No. 23-60116

————————

Anthony Walker,

*Plaintiff—Appellant*,

*versus*

Kilolo Kijakazi, *Acting Commissioner of Social Security*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:22-CV-124

_____

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.
Per Curiam:*

Plaintiff-Appellant Anthony Walker appeals the district court's judgment affirming the denial of disability benefits by the Social Security Administration Commissioner (the Commissioner). Walker contends that in hearing his case, an Administrative Law Judge (ALJ) errantly evaluated proffered medical opinions in denying benefits and that the error prejudiced

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60116

him.  We find that even if the ALJ erred, Walker has not shown prejudice.
Accordingly, we affirm.

## I.

Walker visited Monroe Regional Hospital in Aberdeen, Mississippi, on June 8, 2020, complaining of back pain after doing "heavy work" the week prior and feeling a "pop in his mid back."  On November 12, 2020, Walker filed application for a period of disability and disability insurance benefits under 42 U.S.C. § 423, *et seq.*, as well as an application for supplemental security income under 42 U.S.C. § 1381, *et seq.*  Walker alleged disability starting on June 8, 2020 (the Onset Date).

Walker was informed by the Disability Determination Services (DDS), a Mississippi state agency that partners with the Social Security Administration (SSA), that as part of the application process he might need to submit to a medical examination arranged by DDS.[1]  On December 10, 2020, Dr. Carol Kossman examined Walker.  She noted that Walker filed an initial claim for disability because "7 disks in back are out of place that cause severe pain," but she concluded that "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and [residual functioning capacity].  Therefore, the individual can adjust to other work."  She noted that Walker was not limited to unskilled work because of the impairments, though he demonstrated that his "maximum sustained work capability" was light.  Walker's disability claims were then denied on December 11, 2020; he requested reconsideration of that decision on December 26, 2020.

---

[1] The record does not include correspondence scheduling the appointment.  But Dr. Kossman signed a Social Security Administration Form entitled "Disability Determination and Transmittal."

On his own initiative, Walker sought a second opinion from Dr. Timothy J. Callaghan, who examined him in May 2021. Callaghan recorded Walker's complaint of "continual pain from his middle back all the way down to his lower back" and his "intractable pain." Callaghan's report summary concluded:

> [Walker] is a 52-year-old male who has significant thoracolumbar pain and has an MRI report that was sent to me by disability that shows minimal disc bulge at C1-C2 and a tiny left paracentral disc protrusion T2-T3 and one at T4-T5, as well as one at T8-T9. [Walker] has enough multiple disc lesions that he certainly could have significant intractable pain.

In June 2021, as part of DDS's reconsideration of Walker's claims, Dr. Eugene Bass also evaluated Walker. Bass came to similar conclusions as Kossman did, and on June 28, 2021, Walker's disability claims were denied on reconsideration.

After his request for reconsideration was denied, Walker filed in July 2021 a written request for a hearing before an ALJ. The hearing occurred on November 8, 2021. Afterward, the ALJ issued a written opinion that Walker was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the Act),[2] from the Onset Date through the date of the ALJ's opinion. The ALJ considered, among other evidence, Walker's hearing statements, relevant medical history, and the opinions of Kossman, Callaghan, and Bass.

As relevant here, the Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[2] These sections are codified as 42 U.S.C. §§ 416(i), 423(d), and 1382c(a)(3)(A), respectively.

No. 23-60116

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).[3]  The ALJ employed the sequential, five-step approach prescribed by the Commissioner to determine whether a claimant is disabled:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (paraphrasing steps enumerated in 20 C.F.R. § 404.1520(a)(4)).

At steps one and two, the ALJ found Walker had not engaged in substantial gainful activity since June 8, 2020, and that he had a severe impairment—thoracic spine degenerative disc disease.[4]  But at step three, she concluded that the impairment was not so severe that it "meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. Part 404 Subpart P, Appendix 1.  At step four, the ALJ found "[a]fter careful consideration of the entire record," that "the claimant has the residual functional capacity to perform light work" under 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some exceptions.[5]

---

[3] The Act sets forth an additional definition of "disability" concerning individuals who are at least fifty-five years old and blind.  42 U.S.C. § 423(d)(1)(B).

[4] In her opinion, the ALJ first discussed an additional "step," whether Walker met "insured status requirements of Sections 216(i) and 223" of the Act.  The ALJ found Walker met these requirements, and this finding is not before us on appeal.  Above the line, we reference the steps in conformity with the five prescribed by 20 C.F.R. § 404.1520(a)(4).

[5] Specifically, the ALJ found that Walker had the "residual functional capacity to perform light work . . . except frequently [to] climb ramps and stairs, occasionally [to] climb

In her determination, the ALJ stated that she:

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929 and [Social Security Ruling] 16-3p. [She] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. [§§] 404.1520c and 416.920c.

The ALJ concluded that Walker's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Walker]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."

At the final step, the ALJ concluded Walker was "capable of performing past relevant work as a box printing machine operator," which did not "require the performance of work-related activities precluded by the claimant's residual functional capacity" noted earlier. Ultimately, the ALJ found Walker had "not been under a disability, as defined in the [Act]" during the relevant period.

Walker appealed to the Appeals Council, which declined to change the ALJ's decision. Walker sought review in the United States District Court for the Northern District of Mississippi, and the parties agreed to a final

---

ladders, ropes, or scaffolds, and frequently [to] stoop, kneel, crouch, and crawl." She later noted that Drs. Kossman and Bass "determined that [Walker] could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, [and] frequently stoop, kneel, crouch, and crawl." The ALJ concluded that their analyses were "persuasive." It is thus unclear whether she found that Walker could perform those functions, but that unclarity does not affect Walker's appeal.

disposition by the magistrate judge under 28 U.S.C. § 636(c). The magistrate judge affirmed the agency's decision. Walker timely appealed.

## II.

### A.

The "Commissioner's determination" may be "rendered by [an] ALJ." *See Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Thereafter, a claimant, pursuant to 42 U.S.C. § 405(g), may seek judicial review of the Commissioner's determination in federal district court. And, though procedurally we review the district court's decision, and do so de novo, we remain bound by the same highly deferential standard towards the Commissioner's determination as was the district court. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *see also Reddin v. Kijakazi*, 2023 WL 2525051, *2 (5th Cir. Mar. 15, 2023) ("We review the district court's decision de novo, and our review of the Commissioner's decision is limited . . . .") (unpublished). "We ask only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia*, 880 F.3d at 704 (citing 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Id.* (citing *Masterson*, 309 F.3d at 272). We neither "re-weigh the evidence" nor "in the event of evidentiary conflict or uncertainty . . . substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Id.* (internal citations and quotations omitted).

### B.

In "consider[ing] medical opinions and prior administrative medical findings," an ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those of a claimant's "medical

sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must "articulate . . . how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b). "[T]he most important factors" are "supportability" and "consistency." *Id.* § 404.1520c(b)(2). Specifically, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.*

The thrust of Walker's appeal is that the ALJ improperly considered the proffered medical testimony from Drs. Callaghan, Kossman, and Bass because she failed to articulate her analysis of their medical opinions using the "supportability" and "consistency" factors. We begin with Callaghan's evaluation.

Walker contends that had the ALJ properly evaluated Callaghan's opinion and articulated the supportability and consistency analysis, she would have "determined Dr. Callaghan's opinion to be persuasive [and . . . Walker] would have been deemed unable to work on a regular and continuing basis under applicable guidance." Walker contends that Callaghan's conclusion that Walker "has enough multiple disc lesions that he certainly could have significant intractable pain" buttresses Walker's "subjective complaints of debilitating pain which could lead to a finding of disability." In Walker's view, the ALJ errantly discounted Callaghan's opinion about the disc lesions, intractable pain, and Walker's subjective complaints of pain. Moreover, after proper consideration, the ALJ would have classified Walker in "sedentary or less than sedentary exertional level work which would have resulted in a finding of disability . . . ."

The Commissioner responds that neither Callaghan's "consultative report nor his summary therein contain a 'medical opinion'" because

No. 23-60116

"statements from a medical source reflecting judgments about a claimant's diagnosis and prognosis are no longer considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations." *See* 20 C.F.R. §§ 404.1513(a)(2)–(3); 416.913(a)(2)–(3). More specifically, the Commissioner asserts that Callaghan's statements about Walker's "intractable pain" do not meet the definition of a "medical opinion" under the applicable regulations. As a result, the Commissioner reasons, the ALJ had no duty to analyze Callaghan's evaluation through the "supportability" and "consistency" lens.

We need not decide whether Callaghan's evaluation constituted a "medical opinion" or whether, if so, the ALJ inadequately discussed the "supportability" and "consistency" factors regarding Callaghan's conclusions because Walker fails to show that any error prejudiced him. *See Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009) (holding that doctrine of harmless error applies to administrative rulings).

The ALJ thoroughly considered Callaghan's report. She detailed Callaghan's evaluation of Walker, including Callaghan's conclusion that "the claimant had enough multiple disc lesions that he could reasonably have significant pain." Then she outlined why she found Callaghan's conclusions inconsistent with his exam and other medical evidence, and thus unpersuasive:

> Dr. Callaghan, a one-time consultative examiner, reviewed the claimant's record and proceeded to perform a direct examination on the claimant. As a result of the physical examination, Dr. Callaghan reported that the claimant had full range of motion of the cervical, thoracic, and lumbar spine, as well as full range of motion in all extremities. Dr. Callaghan reported that the claimant exhibited pain with flexion of the cervical spine and thoracolumbar spine, and he exhibited mild

8

tenderness to palpation over the midline of the thoracolumbar spinous processes and costal transverse processes, but no deformity or spasms were present. He also reported that the claimant had a negative straight leg raise test. Upon examining the claimant, Dr. Callaghan expressed that the claimant had multiple disc lesions that could cause him to have significant intractable pain. Dr. Callaghan's opinion is inconsistent with his exam findings, as well as with the other objective evidence in the record.

True enough, the ALJ did not expressly mention "supportability" and "consistency" in arriving at her decision. But Walker fails to show that "if the ALJ had given further explanation, then she would have adopted" Walker's line of thinking and altered her outcome. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773 (5th Cir. 2023) (per curiam) (unpublished); *cf. Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (finding insufficient showing of prejudice when claimant "offered no evidence that additional records . . . would have had an effect on the judgment"). Walker bears the burden to show any error was prejudicial, *Jones*, 691 F.3d at 734, and his failure to do so dooms his argument.

Walker's contentions as to the ALJ's analysis of Kossman's and Bass's opinions suffer the same fate. Walker asserts that the ALJ, in failing to articulate adequately the supportability and consistency requirements, "did not address or reconcile" what he believes are "internal inconsistencies," relevant to the decision. According to Walker, had she done so, she would have "identified these internal inconsistencies, which were material and germane to the outcome of this case." For instance, Walker believes Bass's findings are contrary to his conclusions. He points to Bass's finding that Walker's "statements about the intensity, persistence, and functionality limiting effects of the symptoms [are] substantiated by the objective medical evidence alone," but that Walker could "still be expected

to perform other work" and could stand or walk for six hours during an eight-hour workday.

Walker also points to Bass's finding Walker's statements "credible, which included statements that [Walker] could only walk for one hour before need[ing] a 15-20-minute rest" (i.e., approximately 5 ⅓ hours of walking in a day), yet also concluding Walker could stand or walk up to six hours a day. Walker argues that after a proper analysis, the ALJ would have "recognized and addressed" these "internal inconsistencies" and reduced Walker to "no more than sedentary level work." Ultimately, Walker asserts these errors prejudiced him.

We disagree and conclude that any error by the ALJ in considering Kossman's and Bass's medical opinions was harmless. The ALJ noted that she found both opinions "adequately explained and supported with objective evidence in the record," including Walker's full range of motion, muscle strength, and normal sensation and strength, all of which shows the ALJ considered the opinions. Walker does not outline how further "supportability" and "consistency" analysis would lead the ALJ to a different outcome, and thus fails to show prejudice. The ALJ considered all three evaluations at length in her decision.

## III.

In determining that Walker was not disabled under the Social Security Act, the ALJ considered the evaluations of Drs. Callaghan, Kossman, and Bass, and she found Kossman's and Bass's medical opinions persuasive. She found Callaghan's differing conclusions unpersuasive. Substantial evidence supports her determination. Even if the ALJ did not adequately articulate her reasoning using the "supportability" and "consistency" factors, any error was harmless because Walker fails to show that had she more fully done

so, she would have arrived at a different conclusion. Ultimately, Walker asks us to reweigh the evidence, which we cannot do. *Garcia*, 880 F.3d at 704.

The district court's judgment upholding the Commissioner's determination is

AFFIRMED.